## RAY R. MICKLE v. THE STATE.

No. 23177. Delivered October 31, 1945.
Rehearing Denied January 2, 1946.

54

The opinion states the case.

*Carter & Stiernberg*, of Harlingen, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of colliding with another vehicle and failing to stop and render aid to the occupants of such vehicle, while driving and operating an automobile, and was given a penalty of three years in the penitentiary.

The facts show that appellant, his wife and Mr. Boyer and his wife drove to a beach near Brownsville, Texas, called Boca Chica, and there enjoyed a swim on the 12th day of June, 1944. These parties had some gin and beer, which had been rather freely imbided by the two men, the women not having been so indulgent. A lunch was also enjoyed by them, and while on their journey back from the beach appellant's car ran into the rear

of Mr. Wolcoff's car, striking it twice and throwing the Wolcoff car into a ditch, throwing Mrs. Wolcoff out of the car and causing her death. Appellant and his wife both testified that appellant was asleep on the back seat of the car and the wife said Mr. Boyer was driving the Mickle car. This was denied by both the Boyers. The State's testimony showed that it was called to appellant's attention that he had struck this car, Mr. Boyer calling his wife's attention to the fact that a woman had fallen out of the struck car; nevertheless appellant proceeded to drive away from the scene of the collision at a high rate of speed, and left Mr. and Mrs. Boyer at their apartment, soon returning and requesting them to accompany the Mickles to San Antonio. This the Boyers refused to do, and soon thereafter appellant and his wife left for Corpus Christi, and remained in that vicinity for a few days, and upon ascertaining that he was wanted by the officers appellant returned and surrendered to the officers and made bond.

Bill of exceptions No. 1 is based upon the alleged failure of the trial court to allow the appellant to prove that the husband of the deceased lady had caused a civil suit for damages to be filed by his attorney, the purpose thereof being to show bias and interest upon the part of such husband, Walter Wolcoff.

The trial court allowed appellant to place upon the stand Volney W. Taylor, an attorney who was present in this trial as a special prosecutor, and there was elicited from the witness the following statement as found in the statement of facts: "My name is Volney W. Taylor, and I have stated that I was employed in this case, as private prosecutor, by Mr. Wolcoff." The bill of exceptions then calls for and contains an exhibit "A" which further shows that Mr. Taylor had filed a civil suit for damages against appellant for Mr. Wolcoff for a large sum of money, and that such suit had been dismissed. He was then asked if he intended to again file such suit. This latter question was objected to, and the jury being present until the special prosecutor had answered that he had filed such suit, but that the same had been dismissed at which point the jury was retired. After such retirement the witness answered that he intended to again file such suit, provided he could find some property of appellant's. This latter portion of Taylor's statement as to his intent to refile the damage suit was not heard by the jury, but the previous statement relative to the filing of the suit was heard by the jury and no request was made asking that same be withdrawn from their consideration. We think that such matters should have been

directed to Mr. Wolcoff while on the witness stand, and were more properly provable by him rather than his attorney; however, if provable from Mr. Taylor, then it is shown that all the matters desired to be proven, save an intent to refile the damage suit, were heard by the jury, and no request made to have same withdrawn from the jury. We also think that the intent to do something in the future, on the part of Mr. Taylor, was not material to what interest and motive witness Wolcoff might have in this prosecution. By this holding, however, we do not mean to say that Wolcoff's motive, interest and intent could not have been shown by questioning Wolcoff.

The next question arising herein is found in bills Nos. 2, 5, 6, 7 and 8, and relate to the argument of the prosecuting attorneys, and present the following situation: It is shown that early in the argument the trial court made the following statement to the attorneys:

"Counsel are requested not to interrupt while counsel for the other side are speaking. You have a bill to the whole speech if you want it; take your bill to the whole thing now or later, and that applies to both sides, but don't interrupt unnecessarily."

"Mr. Stiernberg (Of Counsel for Defendant) 'Well, as I understand the rule, we waive our objection unless we make it at the time.'

"The Court: 'Not in this Court you dont. You have a reporter taking this all down, and you have a bill to the whole thing.'

"Mr. Stiernberg: 'We ask an exception to that ruling, and we also except to the ruling that we cannot make an objection at the time—.'

"The Court: 'I didnt say that, Mr. Stiernberg. I'm asking you not to interrupt unnecessarily. If you insist, of course—I'll leave it to you, you're an officer of this Court. You know what I mean by that as well as I do. I understood counsel had employed a reporter to take notes on the entire speech, and if that is true, then you have a right to take a bill of the entire speech.' "

Operating under this above proceeding, appellant's attorneys made no objection to the argument set forth in the five above numbered bills, but relied upon taking a bill to everything said by such attorneys in their argument, they construing the above colloquy as prohibiting them from making any interruptions or objections during such argument, but taking a bill to the whole argument.

This procedure we cannot allow. To do so would destroy the purpose of a bill of exceptions. The attorney making such objectionable statement would be given no opportunity to correct a misstatement, and the trial court would deprive himself of an opportunity to correct such a mistake by withdrawing same from the consideration of the jury.

The following quotation is found in Lomax v. State, 144 S. W. (2d) 563, and is from 4 Tex. Jur., p. 63, Sec. 41:

"Orderly procedure demands that a complaint that counsel in his argument to the jury has transcended legitimate bounds should be addressed to the trial judge, so that he may determine its propriety and counteract any injustice that may portend, and that the offending counsel himself may be accorded opportunity to withdraw any objectionable remarks. It follows that unless a timely and proper objection is made a defendant on appeal will not ordinarily be heard to complain. He is tardy if he does not object until the conclusion of the argument until he makes a motion for a new trial, or until he prepares a bill of exception after the trial. This rule has even been applied to an objection made for the first time in an amended motion for a new trial, in respect of a reference in the argument to the defendant's failure to testify."

To hold otherwise relative to an argument to the jury would result in a destruction of the above rule. However, we have carefully read all these proffered bills of exceptions Nos. 2, 5, 6, 7 and 8, and should same be considered, we are of the opinion that they do not evidence error.

Bills Nos. 3 and 4 seem to have been properly objected to when the matters therein occurred, and to them we now address ourselves.

The matter objected to occurs in the speech of Volney W. Taylor to the jury as follows:

"Where did Ray Mickle go, and who drove the car that night, may it please the jury? When they were threatening Mrs. Boyer out there—'We're ready, come on, let's go to San Antonio,'—She said 'No, you give up, you should have stopped,' and he said: 'I know I should have, but I didn't.' "

The matter referred to in this statement in the bill by Mr. Taylor is as follows:

"We saw Mr. and Mrs. Mickle again later; they returned to our apartment in, I would say, about one hour. They came in and my husband wasn't in the cabin at the time; he was in the office. I had a conversation with Mr. and Mrs. Mickle about the accident when they first came to the apartment; they said they were going to San Antonio to get their car fixed, and I should pack some things and go with them, and Mr. Boyer also. I said no that the right thing to do was for him to give himself up, and go down and report the accident. He said no, it was already over, everything had been done, and there wasn't anything more he could do about it; the only thing he would do would be to just gamble on the deal."

The above statement is appended to the bill as being the one referred to when Mr. Taylor used the phrase: "When they were threatening Mrs. Boyer out there."

We find some further pertinent statements from Mrs. Boyer in which she said: "My husband came back to the apartment some moments later, and we had a further conversation while he was present about this accident. Mr. Mickle asked him to pack some things and come along and go to San Antonio with them. My husband refused, saying it wasn't the right thing to do, and we weren't going. I then asked Mr. Mickle again why he had not stopped, and he said he didn't—he knew he should have stopped, but since he didn't there was nothing he could do about it now, it was too late, and he was going on to San Antonio."

Again, on cross-examination, she said: "My husband did think some one was hurt, knew there was. I did discuss with my husband that he ought to report it, but we were afraid of Mr. Mickle; a man that would do such as that and was still at large, might come back and do some harm to us. You ask me whether I was afraid that a man who had had a wreck was dangerous; it was more than a wreck."

Again she testified relative to the scene of the accident:

"As we proceeded down the highway on the way back to Brownsville, we passed two or three automobiles, and then a little after, after we had passed two or three cars, we came upon another automobile and started to pass it, but instead of passing, Mr. Mickle pulled back behind this auto and bumped him with a terrific jolt. After bumping once, he immediately bumped him again, which sent the car off the road; the last I saw of it it was turning, slowly, off the shoulder of the road, rolling out to the

right, through my window. It looked as if the front wheels had buckled, and it was rolling to the left.

"The defendant, Ray Mickle, was in the car at that time; he was driving, sitting in the front seat.

"My husband said, 'Did you see what I saw?' and I said, 'What', and he said there was a woman flying through the air, and immediately I asked Mr. Mickel to stop the car and go back, that someone was hurt. He didn't seem to hear me or pay any attention, but immediately started gaining speed, racing down the highway. I asked him again to please stop the car, again, and he didn't seem to hear a word I was saying, didn't pay any attention to me at all. He did not stop; he didn't stop at any time between the time we left the beach until we reached the Courts, and Mr. Mickle was driving. He drove very, very fast; around eighty miles an hour."

Under the testimony as above set forth we are of the opinion that the effort to get the witness to go to San Antonio might have been for the purpose of removing the witness to his act that resulted in the fatal injury to Mrs. Wolcoff, and we do not think that the phrase complained of in this bill was of sufficient importance to say that same was injurious to this appellant whose guilt has been fixed by the jury.

Taking into consideration the actions of appellant prior to the collision, at the collision and immediately thereafter; the request of Mrs. Boyer for him to stop; his failure to give any answer to such request; his increased speed, and his general attitude regarding this matter, leads us to think that the use of the phrase "threatening Mrs. Boyer" was not of sufficient import for us to say that same resulted in injury to appellant. This bill will be overruled, as also will be bill No. 4, it relating to the same matter.

Bill No. 9 relates to the trial court's failure to charge, in substance, that the jury must believe beyond a reasonable doubt that it appeared to appellant at the time of the accident that such a collision had occurred that would probably require assistance to the occupants of the other car. Both appellant and his wife had testified that he was asleep in the back of the car at the time of the collision, and that he knew nothing about it until later when his car was stopped about ten miles away from such scene; that he only had a broken light lens, and was in Kingsville when he read about it in the paper. The trial court, however, gave the following instruction to the jury:

"If the jury believe from the evidence that the defendant Ray R. Mickle was asleep on the back seat of the Mickle car, and therefore not driving the car at the time and place charged in the indictment, or if the jury have a reasonable doubt thereof, you should acquit the defendant."

Again, we think the charge requested by appellant was not correct as a matter of law. We have heretofore held that in the event of a collision such as is denounced by this statute, Art. 1150, P. C., one causing the collision must stop, and a failure so to do is a violation of the law. See Bevil v. State, 139 Tex. Cr. R. 513; 141 S. W. (2d) 362; Moore v. State, 140 Tex. Cr. R. 482, 145 S. W. (2d) 887; Morgan v. State, 167 S. W. (2d) 765.

Bill of exceptions No. 10 relates to an attempt upon the part of appellant to get the trial court to instruct the jury that if the accident was not such an accident as would cause an ordinary person to think it was necessary to stop or render aid, then to acquit the defendant. We do not think such an instruction was called for by the evidence as is shown by our discussion of bill No. 9; nor do we think that a collision having occurred, an accused should have the right to defend his failure to stop on the ground that he did not think the injury was sufficiently grave to necessitate rendering of aid to the occupants of the car collided with.

To the same effect is bill No. 11, and that is the judge was requested to instruct the jury that if they believed that appellant had no knowledge of the accident, to acquit him. The trial court went further than such request, and did instruct the jury that if they believed from the evidence, or had a reasonable doubt thereof, that appellant was asleep in the back of the car, to acquit him. Subject to the same ruling is bill No. 12.

Bill No. 13 is governed by what we have said in passing upon bill No. 9, and to the same effect is our ruling on bill No. 14, which is governed by our ruling on bill No. 9.

We perceive no error shown herein, and the judgment will accordingly be affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

In his motion for rehearing, appellant insists that the action of the trial court in limiting, if not denying, his right to object to argument of special prosecutor Taylor at the time it was made, cast upon him an undue hardship under the rule stated in our original opinion. It was for this reason we considered the Bills of Exception Nos. Two, Five, Six, Seven, and Eight, relative thereto.

Argument of State's counsel constitutes reversible error when some mandatory statute is violated, or new and harmful fact injected into the case, or when—in extreme cases—it is manifestly improper, harmful, and prejudicial. Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548; Heidle v. State, 129 Tex. Cr. R. 201, 86 S. W. (2d) 641; Phillips v. State, 136 Tex. Cr. R. 430, 121 S. W. (2d) 1002; O'Mary v. State, 139 Tex. Cr. R. 294, 139 S. W. (2d) 800.

The argument complained of in each of the bills of exception mentioned fails to come within the rule stated. No useful purpose would be served to set out the argument.

The argument complained of in Bills of Exception Nos. Three and Four, relative to the statement by special counsel for the State that they were "threatening Mrs. Boyer," has again been reviewed and we remain convinced that such argument—in the light of the facts as a whole,—cannot be construed as manifestly improper, harmful, and prejudicial.

Relative to the failure to permit proof by the special prosecutor as to the filing of the damage suit, as complained of in Bill of Exception No. One, in addition to what we said originally, attention is directed to the fact that proof of such fact was not attempted or offered upon cross-examination of the witness Wolcoff, the interested party. Moreover, special prosecutor Taylor, by whom the proof was attempted, had not testified as a witness in the case. We are unable to see wherein Taylor's acts or intentions operated to show Wolcoff's attitude.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.