Horace C. REDDING, Appellant,

v.

The STATE of Texas, Appellee.

No. 29759.

Court of Criminal Appeals of Texas.

June 25, 1958.

On Rehearing Oct. 15, 1958.

J. Alton York, E. Colley Sullivan, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert E. Lyle, Jerome Chamberlain and Merle Flagg, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

Our prior opinion is withdrawn.

Appellant was convicted under plural counts of the information of two separate offenses: (1) Operating a motor vehicle upon a public highway while intoxicated (Article 802, Vernon's Annotated Penal Code), and (2) Failure to stop and give certain required information to the occupant of a vehicle with which he had collided, and his punishment assessed at 30 days in jail and a fine of $100 on count one and a fine of $100 on count two.

Count two was drawn under Section 40 of Article 6701d, Vernon's Annotated Civil Statutes which the pleader evidently considered to be a misdemeanor punishable under the provisions of Section 143 of said act. We do not agree. Section 38 provides that the driver of a vehicle involved in an accident shall stop and shall remain at the scene until he has complied with the provisions of Section 40. It is therefore apparent that Section 40 does not denounce a separate misdemeanor but sets forth certain requirements, the failure to comply with which makes the offender guilty of the felony denounced in Section 38. For this reason, the conviction under count two is reversed.

We will now consider the questions raised as to count one.

One Thomas testified that he was seated in his parked pickup truck on the night in question when an automobile approached from his rear, sideswiped his pickup, causing considerable damage thereto, and proceeded on its way; that he started his pickup and gave chase; that during the chase the automobile hit two more parked automobiles and then ran onto a one-way expressway going in the wrong direction, and finally came to a halt when it ran over a curb and into a wall. Thomas stated that he approached the automobile, asked the driver why he had hit him and then run off, and asked for his name, but that the only reply he received was a threat which the driver made to kill him. He stated that he ran into a house, called the police, and upon his return the appellant drove away; that he again pursued him and the appellant again ran into the wall; that he again approached the automobile on foot, was again threatened, and then saw a squad car which he was able to flag down.

Officer Telson testified that Thomas flagged him down near the expressway on the night in question; that he found the appellant seated in the driver's seat of an automobile which had run over the curb while being driven in the wrong direction; that the appellant, when he got out of the automobile, walked with an unbalanced swaying motion, had an alcoholic smell on his breath, cursed the accident-investigating officer when he arrived, and expressed the opinion that the appellant was intoxicated.

Accident Investigator Graham testified that when he arrived upon the scene the appellant refused to give his name or display his driver's license, cursed him and the other officers, claimed to be a prominent doctor, and threatened the officers with the loss of their jobs. He stated that he found a partially empty bottle of whiskey on the seat of the appellant's automobile, arrested the appellant, whose breath smelled of whiskey, whose eyes were bloodshot, and who staggered in his walk, and carried him to jail, and expressed the opinion that the appellant was intoxicated.

Appellant, testifying in his own behalf, admitted having one drink of whiskey on the night in question, denied the presence of the bottle of whiskey in his automobile, claimed that Thomas had run into him, denied that he cursed the officers, claimed police brutality, and denied that he was intoxicated.

The appellant's wife, a patron of his barber shop and several friends testified that he was not intoxicated when they saw him earlier in the evening.

The jury resolved this conflict in the evidence against the appellant, and we find the evidence sufficient to support their verdict.

Appellant first complains of an instruction or admonition by the court. The only reference thereto is found in the transcript, not in the form of a bill of exception, but which, if we considered it as such, presents nothing for review because it recites that no exception was taken to the action of the court.

Bill of exception No. 2 relates to an oral motion to quash the information predicated on the contention that the complaint upon which it was based was sworn to by an incompetent person. A motion to quash must be in writing, but we note that there is an entire absence of any proof in the record that such is the case. If, however, we considered the objection as evidence, this Court has held, in Catchings v. State, Tex.Cr.App., 285 S.W.2d 233, that such a person is not incompetent.

Bill of exception No. 3 relates to the action of the court in instructing the jury not to consider certain testimony as to the appellant's good reputation from the witness Hawkins. Hawkins, upon cross-examination, repeatedly stated that he was basing his testimony on his own opinion rather than what other people in the community said about the appellant. We perceive no error in the bill.

By bill of exception No. 4 appellant complains that the prosecutor was permitted to bolster the witness Thomas. We cannot bring ourselves to agree. The appellant was merely asked why he did not call the police as Thomas had done. The record is undisputed that Thomas called the police and that the appellant did not. Bill of exception No. 6 relates to the same matter and is likewise without merit.

Bill of exception No. 7 requires a fuller discussion. On direct examination, the appellant testified that he had gone to the police station and had been permitted to make a copy of the offense report which the arresting officer had made in his case. At this juncture, the prosecution observed that they considered the evidence inadmissible but that they did not object to its introduction, and his copy was admitted in evidence. From the report, the appellant showed some discrepancy as to license numbers. On cross-examination, he was then asked if the report which he had introduced did not contain some other information such as that he had staggered, used profane language, and "refused test." At this juncture, appellant objected and moved for a mistrial. The court instructed State's counsel not to pursue the matter further.

Since the appellant introduced the report in evidence and testified concerning a portion thereof, the State might then, under the terms of Article 728, Vernon's Annotated Code of Criminal Procedure, question him concerning the remainder of the report and argue the same matter to the jury.

The remainder of the jury argument complained of was normal argument in which the prosecutor urged the jury to accept the testimony of the State's witnesses and reject that of the defense, and we find no error therein.

The conviction under count one is affirmed, and the conviction under count two is reversed.

On Motion for Rehearing.

After further consideration, we have concluded that we were in error in our disposition of count 2 and therefore grant the State's motion for rehearing.

Prior to adoption of Sections 38, 39 and 40 of Article 6701d, Vernon's Ann.Rev. Civ.St. (Uniform Act Regulating Traffic on Highways), in 1947, the law relating to failure to stop and render aid was con-

tained in Article 1150, Vernon's Ann.P.C., which had been adopted in 1917. Upon the passage of Article 6701d, V.A.C.S., Sections 39 and 40, the failure of the driver of any vehicle to stop and remain at the scene until he fulfilled the requirements, of Section 40, in all cases of collision with another vehicle occupied by a person where only property damage resulted from such accident, was made a misdemeanor.

Section 40 requires that in all cases covered by Section 39, supra, the driver of a vehicle involved in an accident should give to the occupants of the other vehicle certain specified aid and information.

■ The Legislature having created the misdemeanor offense of failure to stop and render aid after a collision resulting only in damage to another vehicle, Article 1150, V.A.P.C., insofar as it is in conflict with the misdemeanor statute, was superseded and repealed.

We need not here consider the effect of Article 6701d, Sections 38 and 40, which define a felony offense and provide the same punishment provided for the violation of Article 1150, V.A.P.C. That question is not before us.

■ We have re-examined count two of the information before us and have concluded that it charges the misdemeanor offense defined in Sections 39 and 40 of Article 6701d, punishment for which is found in Section 143 of said Article 6701 d, V.A.C.S., and that we were in error in reversing the conviction under such count.

We have examined appellant's second motion for rehearing and find nothing therein which requires further discussion, and same is overruled.

The State's motion for rehearing is granted, the judgment reversing the conviction under count two of the information is withdrawn, and the judgment as to both counts is now affirmed.

DAVIDSON, Judge (dissenting).

This case arose and conviction was obtained in a county court under an information containing two counts.

The first count charged the misdemeanor offense of drunken driving.

Inasmuch as there is a difference of opinion between my brethren and me as to the offense charged in the second count, the charging part thereof is here copied:

"* * * heretofore on or about the 23rd day of April, A.D.1957, in the aforesaid County and State, said Defendant was the driver and person in control of a motor vehicle, to-wit: an automobile, upon a public highway, to-wit: Pine Street, and said motor vehicle did then and there strike and collide with a vehicle occupied by a person, to-wit: Jenkins Thomas, and did then and there damage said vehicle so collided with, and said Defendant did then and there unlawfully fail to stop and did then and there unlawfully fail to give unto the said occupant of said vehicle so collided with the registration number of said motor vehicle driven by said Defendant and the name and address of said Defendant, at the time and immediately after said striking and collision."

Appellant was convicted under each count of the information. His punishment was assessed at thirty days in jail and a fine of $100 under the first count, and a fine of $100 under the second count.

My brethren affirm the conviction under each count. To that affirmance I do not and cannot agree.

I base my dissent upon two cardinal propositions, these being: (a) that the information charged appellant with a felony in the second count and the county court, therefore, acquired jurisdiction neither of the person of the appellant nor of the offense charged therein, and (b) that there is no statute in this state which makes the

acts alleged in the second count a misdemeanor, for which prosecution might be brought in a county court.

The Constitution of this state fixes the jurisdiction of courts of this state.

The first sentence in Art. 5, Sec. 8, Const., Vernon's Ann.St., says that:

"The District Court shall have original jurisdiction in all criminal cases of the grade of felony * * *."

A felony is an offense for which punishment in the penitentiary may be assessed. Art. 47, Vernon's Ann.P.C.

One may be charged with the commission of a felony only by an indictment of the grand jury. Art. 1, Sec. 10, Const.; Kinley v. State, 29 Tex.App. 532, 16 S.W. 339.

County courts have original jurisdiction of all misdemeanors where the authorized punishment exceeds a fine of $200. Art. 5, Sec. 16, Const.

A county court has no jurisdiction of felony cases. Gates v. State, 151 Tex.Cr. R. 504, 210 S.W.2d 413; Johnson v. State, 77 Tex.Cr.R. 25, 177 S.W. 490; Hincy v. State, 96 Tex.Cr.R. 284, 257 S.W. 541.

Surely there can be no valid challenge of the correctness of the legal propositions hereinbefore stated.

Does the second count of the information in this case charge appellant with the commission of a felony?

In 1917, the legislature of this state created what appears in our penal code as Art. 1150. It reads as follows:

"Failure to stop and render aid. Whenever an automobile, motorcycle or other motor vehicle whatsoever, regardless of the power by which the same may be propelled, or drawn, strikes any person or collides with any vehicle containing a person, the driver of, and all persons in control of such automobile, motor vehicle or other vehicle shall stop and shall render to the person struck or to the occupants of the vehicle collided with all necessary assistance including the carrying of such person or occupants to a physician or surgeon for medical or surgical treatment, if such treatment be required, or if such carrying is requested by the person struck or any occupant of the vehicle collided with; and such driver and person having or assuming authority of such driver shall further give to the occupant of such vehicle or person struck, if requested at the time of such striking or collision or immediately thereafter, the number of such automobile, motorcycle or motor vehicle, also the name of the owner thereof and his address, the names of the passenger or passengers not exceeding five in each automobile or other vehicle, together with the address of each one thereof. Any person violating any provision of this article is punishable by imprisonment in the penitentiary not to exceed five years or in jail not exceeding one year or by fine not exceeding five thousand dollars, or by both such fine and imprisonment."

By that statute it was made unlawful for the driver of an automobile or other motor vehicle to fail to stop after striking a person or colliding with a vehicle containing a person and fail to render to the person struck or the occupants of the vehicle collided with all necessary assistance.

A five-year term in the penitentiary was authorized to be inflicted for a violation of that statute.

The offense denounced by that statute, then, was a felony. Poenich v. State, Tex. Cr.App. 12 S.W.2d 208.

The construction which this court has placed upon that statute is that it is violated by either or both of two fact situations: (1) when the driver of the automobile fails to stop, the failure to stop constituting and being a violation of that

law; (2) when, after having stopped as the statute requires, the driver of the automobile fails to render aid and assistance to the injured persons, such being the duty devolving upon him. See Bevil v. State, 139 Tex.Cr.R. 513, 141 S.W.2d 362; Mickle v. State, 149 Tex.Cr.R. 53, 191 S.W.2d 41.

The second count of the information charged the violation of both provisions of the statute, directly charging therein that appellant

"* * * was the driver and person in control of a motor vehicle, to-wit: an automobile, upon a public highway, to-wit: Pine Street, and said motor vehicle did then and there strike and collide with a vehicle occupied by a person, to-wit: Jenkins Thomas, and did then and there damage said vehicle so collided with, and said Defendant did then and there fail to stop * * *."

As has been pointed out, the allegation of failure to stop charged a violation of the statute.

The duty to render aid and assistance arises only after the driver of the automobile has stopped. Unless and until the driver stops in obedience to the command of the statute, the further command of the statute to render aid is not subject to be complied with. Such further command, then, is a part of and inseparable from the command to stop.

Under all the authorities of which I am aware, including Willson's Criminal Forms, 6th Edition, Sec. 1480, the second count of the instant information charges a felony and a violation of Art. 1150, P.C.

Notwithstanding these authorities, my brethren affirm this county court conviction under such information. If I understand the majority opinion, the holding therein is that the second count of the information charges a violation of Sec. 39 of Art. 6701d, R.C.S., which offense is a misdemeanor. My brethren arrive at that conclusion by construing said Sec. 39 as re-

pealing all of that part of Art. 1150, P.C., which makes it unlawful to fail to stop after colliding with a vehicle containing a person. By that construction they find that Art. 1150, P.C., has been partially repealed. They refuse, however, to determine if the whole of Art. 1150, P.C., was repealed by that partial repeal.

I cannot agree that Art. 1150, P.C., was repealed by any section or provision of Art. 6701d, R.C.S.

The offense created by Art. 1150, P.C., is entirely different from the offense created by said Sections 38, 39, and 40 of Art. 6701d, R.C.S. The subject matter in each statute is separate and distinct, one from the other.

The correctness of my position is demonstrated when Secs. 38, 39, and 40 of Art. 6701d, R.C.S., are construed in connection with Art. 1150, P.C. (such sections to be hereinafter referred to without repeating the article of which they are a part). Those statutes read as follows:

"Sec. 38. [Accidents involving death or personal injuries] (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 40. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment in the penitentiary not to exceed five (5) years or in jail not exceeding one (1) year or by fine not exceeding Five Thousand ($5,000.00) Dollars, or by both such fine and imprisonment.

"Sec. 39. [Accident involving damage to vehicle] The driver of any

vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of Section 40. Every such stop shall be made without obstructing traffic more than is necessary. Any person failing to stop or to comply with said requirements under such circumstances shall be guilty of a misdemeanor.

"Sec. 40. [Duty to give information and render aid] The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's, commercial operator's, or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

Sec. 38 covers only the failure of the driver of a vehicle which is involved in an accident where some person is injured or killed to stop and, after having stopped, to render aid and assistance as required under Sec. 40.

The offense there created is a felony and carries the same punishment as that affixed to a violation of Art. 1150, P.C.

For one to violate that statute, then, he must be the driver of a vehicle—any vehicle—and as the result of an accident in which that vehicle is involved some person must be injured or killed.

Art. 1150, P.C., covers no such fact situations but, rather, entirely prohibits other and separate acts. For instance, Art. 1150, P.C., is violated only by the driver of a "motor vehicle," while Sec. 38 covers any vehicle as defined in the act of which the section is a part—concerning which I will have more to say later. Further, Art. 1150, P.C., is violated by the mere striking of a person. Injury to or the death of the person struck is not an element of the offense there created and neither condition is therefore necessary to be alleged or proved in order to convict under that provision of Art. 1150, P.C.

I am convinced that Sec. 38 and Art. 1150, P.C., are separate and distinct and denounce distinct and separate offenses.

It is interesting to note that the information in this case did not allege facts showing a violation of Sec. 38. It did allege a violation of Art. 1150, P.C.

Now what is the offense created by Sec. 39? It is this section which my brethren hold constitutes a partial repeal of Art. 1150, P.C. Sec. 39 makes it unlawful and a misdemeanor for the driver of any vehicle involved in an accident resulting in damages only to another vehicle attended or driven by some person to fail to stop and render aid as required by Sec. 40. Art. 1150, P.C., makes the failure to stop complete with the mere striking of the other vehicle without reference to whether the vehicle was damaged and without reference to whether an accident was involved and the striking of the other vehicle occurred as a result of an accident.

In addition to the above noted differences between the offenses created by Art. 1150, P.C., and Secs. 38 and 39, there is another paramount difference which precludes any construction that the statutes cover the same offense or make unlawful the same acts: I have reference to the use of the

words "automobile, motorcycle or other motor vehicle" in Art. 1150, P.C. That article is violated only by the driver of an "automobile" or some "motor vehicle." All other vehicles are expressly precluded. Secs. 38 and 39 have reference to any "vehicle" and such sections are violated only by the driver of any "vehicle."

It is and would be very easy to say that the word "vehicle," in its usual acceptation and meaning, includes within its terms "motor vehicles." That is what my brethren hold when they say that Art. 1150, P.C., has been partially repealed by Sec. 39. But the legislature of this state has said exactly to the contrary. The legislature having given a special definition to the term "vehicle," as used in Secs. 38 and 39, that term does not and cannot include a "motor vehicle." In the same act, Art. 6701d, R.C.S., of which Secs. 38 and 39 are a part, the legislature defined a vehicle, as used in the act and therefore as used in those sections, as follows:

"Art. 6701d.　Uniform Act Regulating Traffic on Highways.

"Article 1—Words and Phrases Defined

"Definition of words and phrases

"Section 1. The following words and phrases when used in this Act shall, for the purpose of this Act, have the meanings respectively ascribed to them in this Article.

"Subdivision 1—Vehicles and Equipment Defined
"Vehicles

"Sec. 2.　(a) Vehicle. Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

Such definition, standing alone, may have included motor vehicles within its terms, but the legislature not only did not intend that motor vehicles be included within that definition but it expressly said that it did not include that term, for in the same section and immediately following the definition of "vehicle" the legislature defined a "motor vehicle," as used in the act, as follows:

"Sec. 2.　(b) Motor Vehicle. Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

In plain, intelligible, and understandable language the legislature has said that, in so far as Art. 6701d, R.C.S., and the several sections contained therein are concerned, a "vehicle" and a "motor vehicle" are separate and distinct one from the other. Under no circumstances or by no hypothesis of reasoning could it be said that a "motor vehicle" and a "vehicle" are one and the same.

The legislature did not stop merely with taking "motor vehicles" out of the general definition of "vehicles," but, to make absolutely and doubly sure that the terms "vehicle" and "motor vehicle" were to be restricted to the meaning as expressed in the definition thereof, the legislature defined in the same Sec. (2) of the act, the terms "Motorcycle," "School Bus," "Truck Tractor," "Farm Tractor," "Road Tractor," "Truck," and "Bus." In the definition of each of those terms "motor vehicle" is a part thereof—all of which demonstrates not only the intent but the express will of the legislature that a "motor vehicle" was not included within the definition of "vehicle."

Moreover, this will of the legislature is further demonstrated by the definitions which it gave to the terms "Authorized Emergency Vehicle," "Trailer," "Semi-Trailer," "Pole Trailer," and "House Trailer," as used in the act. In none of those terms does "motor vehicle" appear.

The definition of those terms again demonstrates that a "motor vehicle" is not within the definition of "vehicle," as used in the act, for nowhere in those definitions is a "vehicle" defined as a "self-propelled" vehicle, which is the distinguishing element of the definition of "motor vehicle." If a "motor vehicle" is a "vehicle," then a "trailer," being a vehicle, is a "motor vehicle."

Notwithstanding the language of the statute and the express definitions contained therein, my brethren here hold that a "motor vehicle" and a "vehicle," as used in the statute, mean the same thing and come within the same definition. Talk about judicial legislation and usurpation of legislative power by the courts: Here such are demonstrated in their rankest form, for my brethren not only refuse to accept the statute as written by the legislature but they rewrite into the statute that which is not a part thereof but is expressly contrary thereto. When my brethren hold that the term "motor vehicle" is included within the term "vehicle," as used in Sec. 39, they rewrite those definitions and redefine the terms "motor vehicle" and "vehicle" so as to comport with their own idea of what those terms should be rather than what the legislature of this state said they were.

It is neither the business of the courts nor the prerogative of the judges of the courts to enter the field of legislation, to usurp legislative power, and to enact a law or laws according to their conception of what the law should or should not be.

It is the business of the courts to construe and enforce the law as the legislature has written it and not to write a law or, by the exercise of judicial power, to create a law.

When my brethren say that Sec. 39 prohibits the same unlawful act as does Art. 1150, P.C., and thereby effects a repeal of that article to that extent, they are writing into that section and making unlawful an act which the legislature did not write therein but expressly refused to so write.

I pass, now, to a discussion of the question of partial repeal of Art. 1150, P.C., by Sec. 39, as held by my brethren:

In the passage of Art. 6701d, R.C.S., of which Sec. 39 is a part, the legislature at no time authorized or made provision for partial repeal of existing statutes. To the contrary, the legislature expressly provided in Sec. 156 of Art. 6701d that:

"All laws or parts of laws inconsistent or conflicting with the provisions of this Act are hereby repealed * * *."

To be absolutely sure that all conflicting or inconsistent laws were repealed, the legislature expressly exempted certain statutes. Art. 1150, P.C., was not one of them.

When my brethren hold that Sec. 39 is inconsistent and conflicts with Art. 1150, P.C., they thereby hold that Art. 1150, P.C., has been repealed in its entirety. No other conclusion is authorized if the express words of the legislature are to be recognized or given effect.

There is another and very potent reason why Art. 1150, P.C., has been repealed in its entirety by the holding of my brethren: I call attention to the fact that in affirming this conviction under this information my brethren are holding that there is now no law which makes it a felony for the driver of an automobile to fail to stop after striking and colliding with another vehicle occupied by some person.

Such was the offense created by Art. 1150, P.C., and the offense charged in the information in this case.

If the county court had jurisdiction under the information in this case to render the judgment that it did—and my brethren hold that it did—then Art. 1150, P.C., no

longer exists as a valid law in this state and has been repealed since 1947.

It is regrettable, to my mind, that Art. 1150, P.C., is stricken down and nullified by judicial decree. I cannot refrain from calling attention to the injustice that was done to all those persons convicted of violating a repealed statute after the effective date of Art. 6701d, R.C.S., and Secs. 38, 39, and 40 thereof, as was done in Griffin v. State, 158 Tex.Cr.R. 13, 252 S.W.2d 706, and Salter v. State, 159 Tex.Cr.R. 482, 264 S.W.2d 719, wherein a conviction carrying a penalty of two years in the penitentiary was affirmed in each case, as doubtless other convictions which did not reach this court have resulted since 1947.

If my brethren are right, here, that a prosecution by information charging a violation of Art. 1150, P.C., for failing to stop after a collision can be successfully conducted to final conviction in a county court, then all those persons who have been convicted and sentenced to the penitentiary for violating Art. 1150, P.C., subsequent to 1947, were convicted without authority of law.

That the information in this case was and is fatally defective because it charged the commission of a felony is directly supported by the case of Johnson v. State, 77 Tex.Cr.R. 25, 177 S.W. 490, 2d case. In that case the indictment charged a felony and a misdemeanor in the same count. The district court transferred the indictment to the county court where the conviction was had. The county court conviction was reversed by this court, with direction to the county court to transfer the case back to the district court, which alone had jurisdiction of the felony charged in the indictment.

Here, the same rule applies and, in addition, it will be noted that the prosecution, here, is under an information. There is no indictment in this case. The prosecution arose in the county court.

Because the county court was without jurisdiction to render the judgment that it did render in this case, this prosecution should be ordered dismissed.

I respectfully dissent.