**Earlando WILLIAMS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40575.**

Court of Criminal Appeals of Texas.

Oct. 4, 1967.

Rehearing Denied Dec. 6, 1967.

Certiorari Denied May 20, 1968.

See 88 S.Ct. 1826.

Emmett Colvin, Jr. (on appeal only), Dallas, for appellant.

Henry Wade, Dist. Atty., Frank Watts, Scott Bradley, Robert H. Stinson and Kerry P. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

ONION, Judge.

## OPINION

This is an appeal from a conviction in a bifurcated trial for the offense of rape

with the punishment assessed by the jury at death.

The record reflects that on August 2, 1965, at approximately 1:15 p. m. the appellant, a 17 year-old Negro male, entered the home of the prosecutrix, a housewife, who at the time was watching television in the den with her two sons, ages three years and eighteen months. Appellant raised a knife to the throat of the prosecutrix and told her to take off her clothes. When she did not immediately respond, appellant threatened to kill her. The prosecutrix pleaded with appellant not to harm her children and offered him money to leave and related to the appellant that she was suffering from a parasitic infection of the vagina, a vaginal discharge, causing swelling and irritation in that area. Nevertheless, appellant caused her to remove her blouse and shorts and at knife point forced her to a couch in the room. There, without her consent and in the presence of her children, appellant had an act of sexual intercourse with the prosecutrix. Following the attack the appellant cut the telephone cord and left through the back door. The prosecutrix made immediate outcry to a neighbor. A medical examination of the prosecutrix at 3:30 p. m. that day disclosed the presence of spermatozoa.

A partial palm print lifted from a doorknob in the prosecutrix's home by the Dallas Police Department was later identified as the print of the appellant Williams from a comparison of prints taken after his arrest on November 10, 1965. He was identified by the prosecutrix in a police lineup the day following his arrest as well as in court during the trial.

The appellant's defense was that of alibi which the jury chose to disbelieve.

Appellant's initial ground of error is that he was deprived, by death of the court reporter, of a complete transcription of the record on appeal in violation of his rights under the Texas Constitution and the Four-

teenth Amendment of the United States Constitution.

Following the appointment of one of appellant's trial attorneys and an additional counsel for the purpose of appeal, the record reflects that on June 7, 1966, the court ordered preparation of all proceedings recorded by the court reporter upon a pauper's oath. Thereafter, the court reporter, Jimmy Muleady, died on July 23, 1966, after he had transcribed (though had not certified) all of the trial testimony, the State's opening argument and a small portion of the opening argument for the defense. When the attorneys were subsequently unable to agree on a record, the appellant filed his formal bill of exception No. 1, which was refused. The careful trial judge secured a new court reporter, however, with 17 years of experience as an official court reporter, to complete the transcription. Such reporter used Gregg shorthand as had the deceased reporter, had known him and was familiar with his work. Thereafter, such reporter completed the record using the shorthand notes of the late reporter as well as recording machine discs employed by the deceased during the trial. On November 1, 1966, a hearing was held on the certification of the statement of facts (as distinguished from the approval of the entire record). At such hearing it developed that the new reporter had proof read the work transcribed by the deceased reporter, but had not compared such completed work with the shorthand notes and audio discs of the deceased reporter. Thereupon, the hearing was recessed until December 21, 1966, to permit such comparison. At the later hearing the reporter testified that after comparison he had made a number of pen and ink corrections in the transcribed work of the deceased reporter and had now certified that the transcription was "full, accurate and complete * * * as shown by the original shorthand notes taken at time" and as transcribed by him. Appellant's counsel refused to approve the transcription of court reporter's

notes, but it was approved by the State's attorney and approved after such hearing by the judge who had presided at the trial.

The order approving the record in its entirety was entered on January 16, 1967, following a hearing thereon. Such order shows the trial judge found record "as truly reflecting all the matters and proceedings had and done in this cause."

While at all of such hearings the appellant was present and represented by counsel, he did not offer any proof of any error or omission in record, but merely questioned whether certain words in several sentences had been properly transcribed. The matters brought to the court's attention, if in fact they are errors, appear to be typographical mistakes, insignificant in nature. No showing has been made that the statement of facts on file herein is incorrect in any material respect.

It appears to be appellant's position that since he has suggested or indicated several possible errors, however inconsequential or insignificant, there is a possibility that the record may contain some other errors which deprive him of a complete and accurate record by virtue of the court reporter's death entitling him to reversal.

The only authority cited by appellant is Erisman's Manual of Reversible Errors, Section 586. In none of the cases there cited, involving the death of a court reporter, did a statement of facts reach the appellate court, and the appellant was unable to procure a statement of facts without any fault, negligence or lack of due diligence on his part. See Seliger v. State, 139 Tex.Cr.R. 26, 138 S.W.2d 817; McNabb v. State, 137 Tex.Cr.R. 463, 132 S.W.2d 273; Brannan v. State, 137 Tex.Cr.R. 611, 132 S.W.2d 594; Little v. State, 131 Tex.Cr.R. 164, 97 S.W.2d 479.

In this connection, although not cited, see also Hartgraves v. State, Tex.Cr.App., 374 S.W.2d 888; Seamster v. State, 162 Tex.Cr.R. 172, 283 S.W.2d 243.

The case at bar is clearly distinguishable from these authorities.

In Thomas v. State, 144 Tex.Cr.R. 533, 164 S.W.2d 852, the statement of facts was forwarded to this Court and reflected that it had been approved by the trial judge and the district attorney.

In approving the statements of facts, the trial judge entered the following notation:

"The above and foregoing statement of facts having been presented to me by the District Attorney after having been signed and approved by him, and it appearing to the Court that the Defendant's counsel and the District Attorney are unable to agree upon a statement of facts herein, (The Official Court Reporter having died since the trial of this case), the above statement of facts has been examined by the trial court, and found to contain a complete, fair and accurate statement of the evidence in this case, the same is hereby approved by the Court as a statement of facts herein and ordered filed this 13th day of June, 1942."

There this Court rejected appellant's contention that he had been deprived of a full and complete statement of facts in his case. See also Rodriguez v. State, 164 Tex. Cr.R. 377, 298 S.W.2d 835.

In Hanna v. State, 159 Tex.Cr.R. 2, 259 S.W.2d 570, this Court denied appellant's motion to strike the statement of facts on his claim that the same had not been presented to him for his approval. There it was said:

"We observe that it was incumbent upon the appellant to secure the filing and approval of a statement of facts. He has made no showing in this Court that

the statement of facts on file herein is incorrect in any material respect or that he had agreed with the prosecuting attorney to a statement of facts contrary thereto."

In United States v. Di Canio, 245 F.2d 713 (2d Cir. 1957), the court reporter died five months after the trial of the case, and the transcript was prepared by another court reporter from the notes of the man who had died. However, in Di Canio, unlike the case at bar, there were slight omissions in 32 of the 204 page record marked by asterisks, where the reporter found that the notes of his deceased colleague were not sufficiently legible.

There the United States Court of Appeals stated:

"Appellant does not seek relief by way of a hearing to ascertain by inquiry of the trial judge and the lawyers what was said at the few places where the asterisks appear; indeed, appellant asserts no claim whatever as to what was said but not transcribed. What he does seek is a reversal of the judgment of conviction and a new trial, on the ground of the inadequacy of the record before us."

In affirming the Di Canio case, the court further said:

"There is no rule of thumb to govern the action of this court on an appeal from a criminal conviction in those instances where the court stenographer who reported the trial has died and another reporter has prepared the transcript from stenographic notes. The absence of a completely accurate transcript does not, without more, invalidate a conviction. A new trial will be ordered only if necessary to the protection of a party's rights. Hence, the defects of the record must be of a prejudicial character, not merely inconsequential inaccuracies or omissions. Nor do we say any distinction is necessarily to be drawn between civil and

criminal appeals. Each case must stand on its own bottom; and the outcome will depend upon the circumstances of the particular case. See Annotation, 19 A.L.R.2d 1098." See also 3 A.L.R.2d 88.

In holding that Illinois did not deny the defendant due process or equal protection of law under the circumstances presented, the United States Supreme Court in Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, stated:

"When, *through no fault of the State,* transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made." (Emphasis supplied)

We fail to see what more the able trial judge in the case at bar could have done under the circumstances. An appellant is not entitled to reversal merely because of the death of the court reporter. Here the trial judge availed the appellant and his counsel of three different opportunities to demonstrate why the statement of facts as finally prepared and approved were not a full, accurate and complete transcription of the court reporter's notes taken at the trial. He certainly had his day in Court upon the settlement of the record. In absence of a showing made that the record before us is not what occurred at the trial and that the appellant's rights were prejudiced, we overrule appellant's first ground of error.

In his second ground of error, appellant contends that the Court should have declared a mistrial when the prosecutor injected into evidence and into his jury argument on the issue of guilt an extraneous offense of rape.

In support of his defense of alibi, appellant's trial attorneys called T. H. Hodge, a juvenile parole officer, and elicited from him that the appellant had been paroled

from the Gatesville School for Boys and was under his supervision on August 2, 1965. Following Hodge's assertion that the appellant had been in his office on August 2 at approximately 9:00 a. m., the appellant offered without objection, as Defense Exhibit No. 1, a case card bearing notations concerning the appellant from the official records of the parole officer.

On cross-examination the prosecutor asked Hodge to interpret another portion of his notes on Defense Exhibit No. 1. As the record was originally transcribed by the deceased reporter, the answer of the witness was: "This requests discharge 1–25–65, indicted by Grand Jury rape 2 times."

After the record was reviewed by the second reporter, the response of Mr. Hodge was corrected to read:

"This requests discharge 1–25–65, indicated by Grand Jury 24 rape two counts." [1]

The witness thereafter explained that his notation "rape 2" meant "two cases."

■ All of the testimony elicited on cross-examination from the parole officer was without objection at any time, and related to an exhibit introduced in evidence in its entirety by the appellant. We perceive no error as to such interrogation. Redding v. State, 166 Tex.Cr.R. 517, 316 S.W.2d 724. See also Article 38.24, Vernon's Ann. C.C.P.

It is further observed that on re-direct examination of the parole officer, appellant elicited the same evidence that appellant had been indicted by the Grand Jury in two separate cases of rape and the fact

that the case at bar was one of the two cases.

■ While appellant in his brief does not point out or set out the argument complained of, the only argument possibly relevant shows that the prosecutor stated to the jury: "He would like to walk out of this courtroom free, but he wouldn't go far, because the parole officer, Hodge, told you there were two indictments for rape, not one, but two."

To which argument appellant's counsel offered a general objection not stating specific grounds thereto. While such objection appears to be legally insufficient, see Erwin v. State, 171 Tex.Cr.R. 323, 350 S.W.2d 199; Howe v. State, Tex.Cr.App., 380 S.W.2d 615; McLain v. State, Tex.Cr. App., 383 S.W.2d 407, the careful trial court nevertheless sustained the objection, and at appellant's request instructed the jury to disregard the argument. Appellant did not at the time move for a mistrial or request the Court to take any further action. It appears that at the time appellant was satisfied with the action of the Court, and he is in no position now to complain. Hughes v. State, Tex.Cr.App., 409 S.W.2d 416. We do note that appellant's counsel filed a written motion for mistrial following the conclusion of the arguments. Such motion clearly came too late. Under the circumstances, no error is presented, and appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends that the failure of the trial court to hold a unitary trial in a capital case constituted fundamental error in violation of Article 26.14, V.A.C.C.P.

At the outset we observe that Article 26.14, supra, (formerly Article 502 C.C.P.

1. It is observed, though not mentioned in either brief, that Defense Exhibit No. 1 attached to the record bears the notation "Reg. disch. 1–25–66 indicted by G.J. 24 Jan. Rape 2." Further, the indictment before us reflects it was returned by the Grand Jury of Dallas County on January 24, 1966.

1925) relates to a plea of guilty or nolo contendere in a felony jury trial and has no application to a plea of not guilty before a jury in a felony trial as in the case at bar.

In Rojas v. State, Tex.Cr.App., 404 S.W.2d 30, decided after the trial of the case at bar, we were confronted with the bifurcated trial of a case under the provisions of Article 26.14, supra. There it was established that the provisions of Article 37.07, Section 2, V.A.C.C.P., whereby "the issue as to guilt or innocence is first submitted to the jury without authorizing the jury to pass upon the punishment to be imposed," is not applicable where the case is submitted to the jury on a plea of guilty, or in a capital case where the State is seeking the death penalty.

The case at bar is a capital case in which the State's attorney gave written notice in accordance with Article 1.14, V.A.C.C.P., that the State would seek the death penalty. Thereafter, the trial court submitted the issue of guilt or innocence of the appellant without authorizing the jury to pass upon the punishment to be assessed, without objection from the appellant.

In fact, the trial judge dictated into the record at the hearing on the approval of the record that appellant's counsel had in fact requested a bifurcated trial.

In Williams v. State, Tex.Cr.App., 415 S.W.2d 917, where a bifurcated trial was had in a capital case in which the State was seeking the death penalty, it was stated:

"We express the view that, though such procedure is not authorized by Art. 37.07, C.C.P., a defendant pleading not guilty in capital case where the state is seeking the death penalty is denied no constitutional or statutory right when, without objection or at his request, separate trials are had before the same jury on the issues of guilt or innocence and the punishment to be assessed." See also Miller v. State, Tex.Cr.App., 412 S.W.2d 650.

This holding was re-affirmed in Jones v. State, Tex.Cr.App., 416 S.W.2d 412. Therefore, appellant's third ground of error is overruled.

It should be further observed that after August 28, 1967, a bifurcated trial will be required in all felony jury cases where the defendant pleads not guilty, including capital cases where the State is seeking the death penalty. Article 37.07, Section 2, V.A.C.C.P. as amended, Acts 1967, 60th Leg. Ch. 659 p. 1732, 1739.

■ Appellant's fourth ground of error contends the assessment of the death penalty violates the Eighth and Fourteenth Amendments to the United States Constitution in that it constitutes cruel and unusual punishment. The only authority cited by appellant in support of his contention is the dissenting opinion to the order denying the petition for writ of certiorari in Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119. For the reasons set forth in Ellison v. State, Tex.Cr.App., 419 S.W.2d 849, this day decided, we reject such contention. See also Siros v. State, Tex.Cr.App., 399 S.W.2d 547; State v. Gamble, S.C., 155 S.E.2d 916, 917.

Finally, appellant urges this Court to consider an additional ground of error raised for the first time by supplemental brief filed in this Court on July 24, 1967. Appellant acknowledges that he did not assign this ground as error on appeal in the trial court as required by Article 40.09, Section 9, V.A.C.C.P., but contends that it is of constitutional dimension and should be considered "in the interest of justice." Article 40.09, Section 13, V.A.C.C.P.

■ In such ground of error appellant claims that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by refusing his motion for continuance so as to afford his trial counsel a fair opportunity to develop a defense based upon appellant's

mental condition. In support of such contention appellant cites Hintz v. Beto, 379 F.2d 937 (5th Cir., June 29, 1967), where the United States Court of Appeals reversed the conviction for the failure of the Texas trial court to grant the written motion for continuance and to grant appointed counsel time for preparation and for study and evaluation of a psychiatric examination where mental competency was in question.

There the Court said in part:

"We come now to the second issue. The right to counsel offered under the Sixth Amendment means the effective assistance of counsel and effective assistance requires time for preparation. Powell v. State of Alabama, 1932, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158; Roberts v. United States, 5th Cir., 1963, 325 F.2d 290. Time for preparation, where mental competency is in question and there is a fair factual basis as here for the question, would at least include a reasonable time within which to have a defendant examined, and for preparation of such defense as might be based on the facts developed by the examination. * * *

"Undoubtedly, the psychiatrist and the motion for continuance could have been pursued with more vigor. The need for the continuance, however, was made in writing and the facts buttress the need for the continuance. * * *"

The case at bar can be readily distinguished from Hintz v. Beto, supra, for many reasons, but principally because the appellant here was represented at the time by retained counsel, there was no fair factual basis for the question of mental competency to stand trial or insanity as a defense, and the motion for continuance was oral, not written, as required by Article 29.03, V.A.C.C.P.

The record reflects that on February 21, 1966, the Court passed this cause and specially set it for trial on March 14, 1966. From the colloquy at the bench and from the docket sheet entries it appears that on March 9th or 10th, Mr. Harold Adams, appellant's employed counsel of "several weeks," requested of the Court the appointment of a psychiatrist. The request appears to have been refused since indigency was not involved, but the Court nevertheless offered $100.00 from county funds to assist appellant in securing a psychiatrist of his own choice. Further, the Court, while of the opinion that he could not appoint counsel where appellant was not indigent and had retained counsel, nevertheless secured at such counsel's request another lawyer (Mr. Al Leviton) who agreed to assist in the defense.

On the morning that the trial commenced (March 14th), appellant's retained counsel filed a motion requesting the appointment of a psychiatrist to examine the appellant for mental competency. Such motion did not allege indigency nor set forth any explanation as to why appellant had been unable to secure a psychiatric examination since the return of the indictment. It did not allege facts to demonstrate a need for such an examination or to otherwise justify such appointment. No testimony was offered in support of such motion.

From the colloquy at the bench when said motion was heard and overruled, it appears that appellant's counsel was informed by one of the prosecutors that the appellant had been examined by a Dr. John Hollbrook and found sane. It is not clear whether the State had secured the services of the doctor or whether he had been appointed by the Court. There is no appointment order in the record. The Court assured defense counsel that such doctor would be made available to him at any time he desired and that he would be given time to discuss the examination with him. Further, the Court clearly indicated that appellant could obtain a psychiatrist of his own choosing and time would be allowed during the trial for such examination, and that the Court was still willing to offer the payment of $100.00 for such purpose.

Thereafter, appellant's motion for continuance on ground of the examination by Dr. Hollbrook without his knowledge and requesting time for an additional examination by another psychiatrist of his own choice was overruled. Such motion was not in writing or sworn to by the appellant. Articles 29.03, 29.08, V.A.C.C.P.

From the overruling of such motion until the filing of the supplemental brief in this Court, the record is devoid of any mention of appellant's mental competency or incompetency. Certainly the issue of mental competency or insanity as a defense was not in issue in the case, and we have searched the record without finding any factual basis for such questions.

We are unable to determine from the record if Dr. Hollbrook did in fact make an examination. No report appears in the record. It is not shown whether appellant's counsel discussed the matter with Dr. Hollbrook or not, or whether appellant was later examined by a psychiatrist of his own choosing. Appellant at least makes no complaint now that he was prevented from discussing the alleged examination with Dr. Hollbrook or was not given a reasonable time to do so, or that he needed help in interpreting the Hollbrook report. Certainly appellant now makes no specific claim that he is in possession, even at this late date, of information relating to mental competency and insanity as defense which he was prevented from studying and evaluating and using by virtue of the Court's action in overruling the oral motion for continuance.

It is observed that appellant's counsel during the trial called as defense witnesses the appellant, his mother, his sister, his cousin, juvenile parole officer, and several friends and acquaintances, some of whom should have been able to know if appellant had had a history of mental illnesses or disorders, or previous psychiatric examinations, commitments to mental institutions, or had displayed abnormal, irrational or bizarre behavior or conduct, and no questions were propounded to any of such witnesses as to appellant's mental condition.

Appellant's counsel at no time has asserted any facts relating to appellant's mental condition from which it could even be intimated that there is a fair factual basis for the question of mental competency or the question, that appellant now seeks to raise, of insanity as a defense.

We fail to see how, under the circumstances presented, the appellant was denied a fair trial and the effective assistance of counsel.

The judgment is affirmed.