**Gregory Barnett GRIGGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–03–00286–CR.**

Court of Appeals of Texas, Waco.

April 13, 2005.

Discretionary Review Granted Sept. 28, 2005.

Robert C. Dunn, Jacob Davis, Dunn & Associates, Corsicana, for appellant.

Steve Keathley, Navarro County Dist. Atty., Corsicana, Matthew W. Paul, State Prosecuting Atty., Austin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Gregory Barnett Griggs was found guilty by a jury of aggravated sexual assault on an elderly person. TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2004–05). He was sentenced to life imprisonment and fined $10,000. He brings four issues on appeal: (1) his right to a fair and impartial trial was violated by the court's allowing a witness to testify without proper notice being given by the State; (2) the evidence was not factually sufficient to sustain a verdict of guilty; (3) the trial court improperly overruled his motions for mistrial; and (4) the verdict is weakly supported by the record and the prosecution's case was fraught with error.

## BACKGROUND

The victim testified that she was sexually assaulted in her home by an unknown assailant. She had fallen asleep in front of the television and awoke in the dark. Her assailant ripped open her robe, held her arms, and sexually penetrated her. She was unable to see her assailant. Afterwards, she heard crashing sounds as the assailant escaped through the kitchen. When police arrived, they found a back door smashed out and shards of broken lattice panels. An officer testified that he found a glove lying on the ground among the lattice shards and paint chips. DNA found in the glove was compared to a blood sample drawn from Griggs. A DPS criminologist and a DNA expert each testified that the DNA from the glove matched that from the blood sample. Two witnesses testified to conversations they had with Griggs while they and Griggs were inmates. Inmate Gravitt testified that Griggs admitted to sexually assaulting an

elderly woman in Griggs's neighborhood. Inmate Spencer testified that Griggs nodded and grinned when he asked Griggs if he had committed the assault.

**Undisclosed Witness**

 Griggs argues that he was denied his right to a fair and impartial trial because the trial court allowed a witness to testify without proper notice being given by the State. On the second day of testimony, the prosecution requested leave to allow an additional witness to testify. Over Griggs's objection, the trial court allowed the testimony to be presented to the jury. In determining whether or not a trial court abused its discretion in allowing an undisclosed witness to testify, we consider whether the prosecution's action constituted bad faith and whether the defendant could have reasonably anticipated the witness's testimony. *Wood v. State*, 18 S.W.3d 642, 649 (Tex.Crim.App.2000).

The undisclosed witness—inmate Spencer—testified to a conversation he had with Griggs. Spencer's attorney and the prosecutor both testified that the prosecution did not become aware of Spencer's willingness to testify and of the conversation to which he would testify until the afternoon before the State requested leave to allow the testimony. The prosecutor informed Griggs's counsel that evening of its intention to add Spencer to its witness list. The trial court found no bad faith on the State's part and determined that the prejudice to the defense could be cured by granting defense counsel time to prepare. The court ordered the State to provide the defense relevant information regarding Spencer for the purpose of preparation and cross-examination.

Because the trial court could have reasonably found that the State did not learn of this witness until the time of trial, and because the trial court provided the defense an opportunity to prepare for cross-

examination of the witness, the trial court did not abuse its discretion in allowing the witness testimony. *See Stoker v. State*, 788 S.W.2d 1, 15 (Tex.Crim.App.1989); *Bridge v. State*, 726 S.W.2d 558, 566 (Tex. Crim.App.1986).

**Factual Sufficiency**

 Griggs argues that the evidence at trial was not factually sufficient to sustain the verdict. We review factual sufficiency by considering all of the evidence in a neutral light to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004).

Griggs argues that there is no physical evidence that placed him in the house where the attack took place. However, testimony by the investigating officer and the victim supports the State's theory that the glove containing Griggs's DNA was worn by the assailant during entry into the house and left behind by the assailant as he exited the home by breaking through the lattice and screen door. Inmate Gravitt testified that Griggs bragged to him that he had assaulted an old woman in his neighborhood. Inmate Spencer testified that while he and Griggs were discussing the indictment against him, Griggs "grinned and shook his head yes" when the inmate asked Griggs if he had committed the crime. The defense called other inmates who testified that they had been asked by law enforcement officials to give information about Griggs. One inmate testified that inmate Gravitt said he would "give up a name for a whole bunch of time" and stated his desire to "take him [Griggs] down."

The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.

1991). The evidence is not factually insufficient merely because the jury resolved conflicting views of evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997). Because we must defer to the jury's determination of credibility, we cannot say that the jury was not rationally justified in finding Griggs guilty of the assault.

**Motions for Mistrial**

■ Griggs argues that the trial court improperly overruled his motions for mistrial after the State disregarded rulings and instructions by the trial court. We review an order denying a motion for mistrial for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim. App.2003). A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict could be reached but would have to be reversed on appeal due to an obvious procedural error. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999).

■ Griggs complains of two types of prosecutorial misconduct. First, he argues that the prosecutor deliberately positioned a trial exhibit—a photograph that had been ruled inadmissible—face up on his counsel table in view of the jury. Griggs brought this to the court's attention and requested a mistrial. The trial court denied the motion, instructed the prosecutor to keep documents not admitted into evidence out of the sight of the jury, and instructed the jury to disregard any documents, photographs, or objects they might see in the courtroom that have not been admitted as evidence. Although we do not condone such activity, we find that the instruction was sufficient to cure any harm.

■ Second, Griggs argues that the State committed prosecutorial misconduct by eliciting extraneous allegations against him. The court instructed the prosecutor that there should be no testimony regarding any criminal acts or offenses which were not subject to the current proceedings. The court specifically expressed its concern regarding testimony of admissions to three sexual assaults. In response to the court's instruction, the prosecutor requested a break to speak to the witnesses before they were called. Nevertheless, when the prosecutor asked Gravitt what Griggs told him, Gravitt responded: "That he had raped some older women." Later in his testimony, Gravitt repeated his statement that Griggs said "he had raped older women." The prosecution's next witness was the detective to whom Gravitt had made the statement. The detective testified that Gravitt had told him that Griggs said "he had raped three elderly women in his neighborhood."

■ The State argues that Griggs failed to preserve his complaint in this instance because he did not timely object to the testimony. Generally, a timely objection to a violation of a motion in limine is necessary to preserve a complaint of error. *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex.Crim.App.1994). However, an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim.App.2004). At the conclusion of the two witnesses' testimony, Griggs made a motion for mistrial and requested an instruction. The trial court denied the motion for mistrial and instructed the jury before the next witness was called. Under these circumstances, Griggs's actions were sufficient to preserve the complaint about the mistrial ruling. *See id.* (If an instruction could not have enabled the continuation of the trial by an impartial jury, "the only suitable remedy is a mistrial, and a motion for mistrial is the only essential

prerequisite to presenting the complaint on appeal.").

▇▇▇▇ The asking of an improper question will seldom require a mistrial because, in most cases, any harm can be cured by an instruction to disregard. *Ladd*, 3 S.W.3d at 567; *Hernandez v. State*, 805 S.W.2d 409, 413–14 (Tex.Crim. App.1990). Similarly, a witness's inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Crim.App.1998). An exception exists where the reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *Id.* A mistrial is required only when an improper question or reference is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Ladd*, 3 S.W.3d at 567; *Simpson*, 119 S.W.3d at 272. Regardless of whether the prosecutor's questions were intended to elicit the inadmissible testimony, the focus of our analysis is on the prejudice to the defendant. The testimony was not only heard by the jury but was repeated by two State's witnesses, one of whom was the investigating officer in the case. Furthermore, the testimony was given in violation of the court's earlier ruling. Afterward, the trial judge himself expressed concern that the testimony of the witnesses had jeopardized the trial. The impression produced in the minds of the jurors—that Griggs might be a serial rapist of elderly women—was highly prejudicial and could not be cured by an instruction to disregard. Given the lack of direct identification of the perpetrator of the crime charged, and because the prosecution relied heavily upon Griggs's alleged admissions to his fellow inmates, the danger that the jury may have been swayed by the inadmissible testimony was particularly high. Under these circumstances, the trial court abused its discretion in denying Griggs's motion for mistrial.

## Weak Verdict/Prosecutorial Error

In his final issue, Griggs argues that the verdict is weakly supported by the evidence and the prosecution's case was fraught with error. However, we have addressed the factual sufficiency of the evidence and Griggs does not present any additional prosecutorial errors for our review. Thus he presents no additional issue for our review.

## CONCLUSION

Finding that the trial court abused its discretion in denying Griggs's motion for a mistrial, we reverse the judgment and remand the cause for a new trial.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

The majority grasps onto a new statement from *Young* and drops its prior discussion of *Lankston*. *Young v. State*, 137 S.W.3d 65 (Tex.Crim.App.2004); *Lankston v. State*, 827 S.W.2d 907 (Tex.Crim.App. 1992). If the majority would embrace the entirety of what the court said in *Young*, there is no doubt in my mind that this case would not be reversed. The majority, however, fails to perform a proper analysis of the manner in which the evidence was admitted and the timing of the motions made by the defense.

So, if the reader will indulge me, only for a little while, in the second portion of this dissenting opinion I will attempt to explain where the majority errs. But first I must give the procedural history for the sake of those that follow after us.

## PROCEDURAL PRELUDE

In the past we have withdrawn so few opinions that no particular problem was created if the opinion was withdrawn by an order separate from the new opinion being issued. The problem is that over the past year we have withdrawn numerous opinions, with and without motions for rehearing, and when on motion for rehearing, with and without requesting responses. Issuing multiple opinions in the same appeal creates confusion. A person can hold in their hands two opinions from this Court, both certified by the clerk as authentic, which are not the same. Our past practice has been that the latter normally does not reference the existence of the earlier opinion that is being withdrawn.

Our past practice did not present a problem when the issuance of another opinion in the same case was rarely done. At least the problem was manageable. But due to the greatly increased frequency of the majority issuing multiple opinions, I thought it was an appropriate time to adopt the procedure utilized by the Texas Supreme Court; to include the order, and explanation if needed, withdrawing the prior opinion as the first paragraph of the new opinion. See e.g., Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 381 (Tex.2000).

This is a simple procedure for the convenience of anyone reading the opinions to understand and easily determine which opinion is the Court's final opinion. This process also allows a researcher, interested in the ultimate disposition, to easily track backwards, if necessary, to see the development of the final opinion. Because the majority refuses to provide that information in its opinion, I do so in this dissenting opinion.

## HISTORY OF THIS COURT'S OPINION

The State's Motion for rehearing is denied. The Court's opinion reversing the trial court's judgment, the judgment, and Chief Justice Gray's dissenting opinion, all dated February 2, 2005, are withdrawn and the Court's opinion, Chief Justice Gray's dissenting opinion, and the judgment of this date are substituted therefore.

With these comments regarding the history of this appeal, I now proceed to the substance of my dissenting opinion.

## SUBSTANTIVE PART

### DISSENTING OPINION

We must first address whether an issue is properly preserved for our review. In its earlier opinion the majority determined the issue was preserved and relied upon Lankston as follows:

> Under these circumstances, Griggs's actions were sufficient to preserve the complaint about the mistrial ruling. See Lankston v. State, 827 S.W.2d 907, 909 (Tex.Crim.App.1992) ("all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial court judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.")

Griggs v. State, No. 10–03–00286–CR, 2005 WL 241217, *4, 2005 Tex.App. LEXIS 866, *8 (Tex.App.-Waco Feb. 2, 2005) (withdrawn, April 13, 2005). In my original dissent, I pointed out that although the majority quoted Lankston, they then ignored it.

The majority's earlier opinion triggered two responses; one predictable, and the other very rare. In a predictable response to the opinion, the district attorney filed a motion for rehearing. The district attorney, in an effort to refocus the majority on the operative part of Lankston, forcefully argued that the issue was not preserved

for our review because the objection and motion for mistrial were not made "at a time when the trial court [was] in a proper position to do something about it." The district attorney pointed out the delay in making the motion for mistrial, which was made long after and separated by time and events from the acts about which complaint was made.

And in a rare move, the second response to the majority's earlier opinion was that the State Prosecuting Attorney submitted a friend-of-the-court brief in support of the district attorney's motion for rehearing. In addition to supporting the district attorney's argument, the State Prosecuting Attorney also argued that the majority's characterization of the purpose for requiring a timely objection was not accurate. The State Prosecuting Attorney pointed out that if

> ... the defendant timely objected when the evidence was offered, then any error or prejudice to the defendant could have been avoided by the trial court having sustained the objection and having not allowed the question to be asked. Or, in some cases, any prejudicial effect could have been removed by an instruction from the trial court to disregard the question and/or answer. In either of these situations, the radical, disruptive result of granting a mistrial and bringing the trial to a premature conclusion ... would have been avoided.

State Prosecuting Attorney's Brief as Amicus Curiae in Support of State's Motion for Rehearing, pg. 2.

Undaunted, the majority finds new hope in *Young*. *Young v. State*, 137 S.W.3d 65 (Tex.Crim.App.2004). The majority now lays down *Lankston* and picks up *Young* and hangs its hope of reversing this conviction on the following discussion in their new opinion:

However, an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event. *Young v. State*, 137 S.W.3d 65, 70 (Tex.Crim.App.2004). At the conclusion of the two witnesses' testimony, Griggs made a motion for mistrial and requested an instruction. The trial court denied the motion for mistrial and instructed the jury before the next witness was called. Under these circumstances, Griggs's actions were sufficient to preserve the complaint about the mistrial ruling. *See id.* (If an instruction could not have enabled the continuation of the trial by an impartial jury, "the only suitable remedy is a mistrial, and a motion for mistrial is the only essential prerequisite to presenting the complaint on appeal.")

Majority op. at pp. 78–79.

The majority goes on to the conclusory statement that the "impression produced in the minds of the jurors—that Griggs might be a serial rapist of elderly women—was highly prejudicial and could not be cured by an instruction to disregard." Of course, this is the necessary conclusion of the harm analysis to reverse the conviction. The majority offers the reader no analysis to support this conclusion. I find no support for this conclusion in the case law, this record, or the majority opinion. I will briefly comment on this analysis but must first focus on preservation of the issue for our review.

The majority's analysis of preservation is fundamentally flawed. What the majority has to do is base its determination of preservation of the issue for our review on the motion for mistrial. The motion for mistrial was made after several statements were made during testimony received from multiple witnesses, and the motion was not made until after the court raised the issue.

So before we accept the majority's preservation analysis, maybe we need to do two things. First, we need to revisit the record. Second, we need to revisit *Young* and *Lankston.*

Please forgive the length of the record excerpts but to even begin to place the insignificance of this evidence in its proper light, a reader is entitled to see the manner in which the issue arose at trial. The following excerpts will give the reader the context in which four statements regarding multiple rapes were made. And remember these excerpts are from a lengthy record of other evidence. Please pay particular attention to the page numbers from the record on which these statements were made.

The first two statements were by Mr. Gravitt. Gravitt was a cellmate of Griggs for a period of time.

Q. What did you do—or what did you do with regards to Mr. Nichols, we were talking about that earlier?

A. I just, I put in a request to speak to Mr. Nichols about Griggs—

Q. Okay.

A. —and the statements he gave to me.

Q. All right. Now, what statement did Mr. Griggs give to you? Amongst other things tell the jury what Mr. Griggs told you.

A. That he raped some older women, and it went on quite a bit farther than that, you know, that—

Q. Did he make a statement to you that he raped an old woman?

A. Yes, sir.

Q. What else did he say?

A. And that the cops was trying to get him and they wasn't going to get him, they—they didn't have nothing on him, he was going to win. I

mean, be brugged—he bragged about it quite regularly.

Q. Did he do this one time or many times?

A. Many times.

Q. Did or did not Mr. Griggs say anything about where he had done this, this alleged rape?

A. Yes.

Q. And what did he say?

A. He said around where he lived.

(RR Vol. 10, page 57, line 3 to page 58, line 3) Note that no objection, request, or motion for mistrial was made. Then the following testimony was elicited. In this passage, note the District Attorney's effort to avoid the complained of testimony.

Q. And tell the jury again what Mr. Griggs told you with respect to, amongst—leaving out the other things, about the rape of a lady?

A. Mr. Griggs—

Mr. Dunn: Your Honor, we object. I'm afraid that is a coaching, a leading. Your Honor, I have no way to protect the record in this case, and before this evidence is submitted, so I can protect the record, I'd like to take it out of the presence of the jury.

Mr. Keathley: Well, Your Honor, I'm trying to operate under the perimeters of the Motion in Limine with respect to what can be admitted and what cannot be.

The Court: I'll tell you what, why don't you ask specific questions with respect to this witness, and we'll proceed in that fashion. If I perceive that there's a difficulty with it, then I may take the rest of the testimony out of the presence of the jury, but I see no need to do it at this time.

Mr. Keathley: Okay. Thank you.

Q. (By Mr. Keathley) Did he or did he not admit to raping an elderly lady to you?

A. Yes, sir.

Q. What did he say with regards to just that—that point?

A. Just as I said in the statement, that he had raped older women—

Q. No, no. I said—

A. An older lady and that they—they was trying to catch him and they didn't have nothing on him, he had it beat, I mean, and it went on and on, and you really got tired of hearing it.

(RR Vol. 10, page 59, line 22 to page 61, line 2) Note that no objection, request, or motion for mistrial was made after the portion of the testimony about which a complaint is now being made.

The next witness was Jason Grant. Officer Grant also made two references during his testimony that are at issue.

Q. What did Mr. Gravitt tell you in respect to the investigation of the rape . . . ?

A. He told me that he was in the cell with Greg Griggs and Greg had told him that he had raped three elderly—

Q. Hold on. Mr.—Mr. Grant, with specifics as to Mr. Griggs only, what did Mr. Gravitt tell you?

A. That Griggs told him that he had raped three elderly women in his neighborhood and that he—he had told him about a towel and a screwdriver and that he was paranoid that we were trying to get his DNA so we could catch him.

Q. Okay. Did he use the actual term neighborhood?

A. I believe so.

Q. And did he use the actual term elderly?

A. Yes.

Q. What did that lead you to conclude?

A. Well, it led me to believe that Griggs was a suspect in this case.

Q. Did you know where Mr. Griggs lived prior to this?

A. Yes.

Q. And where was that?

A. On Ficklin.

Q. I show you State's Exhibit No. 45. Again, would you point out Mr. Griggs' home?

A. Right here. (Pointing)

Q. And would you point out [the victim's] home?

A. Right there.

Q. Just to refresh the jury's memory. How far away are they in proximate distance?

A. Maybe half a mile.

(RR Vol. 10, page 80, line 21 to page 81, line 24) Note that no objection, request, or motion for mistrial was made.

Another witness was then called. But before the witness was sworn, the jury was excused. And then the issue was raised by the trial court as to whether a limiting instruction should be given regarding extraneous offense evidence.

The Court: Mr. Dunn, how do you feel about that?

Mr. Dunn: Your Honor, I think in order to protect the record I need to make a motion for a mistrial—

(RR Vol. 10, page 95, lines 11–14).

This was the first time defense counsel requested a motion for mistrial, and he did not request an instruction to disregard until page 96, lines 5–7.

The trial court gave the following instruction to the jury:

The Court: Be seated. Members of the jury, before we resume the testimony in this case there's a brief instruction that I would like to give you. That instruction applies to all the evidence in this case and all the witnesses who have testified, but specifically the last two witnesses who have testified. The instruction of the Court is as follows: You shall not consider any testimony or evidence of alleged crimes or acts other than those which may relate to the alleged assault upon [the victim]. That is the Court's instruction at this time.

(RR Vol. 10, page 97, lines 9–18)

To summarize:

1. Witness uses the term "women" in reference to the victims. No objection, request, or motion. Pg. 57.
2. Witness uses the term "women" in reference to the victims. No objection, request, or motion. Pg. 60.
3. Second witness references "three elderly women" as victims. No objection, request, or motion. Pg. 80.
4. Second witness references "three elderly women" as victims. No objection, request, or motion. Pg. 81.
5. The trial court raises the issue out of the presence of the jury. Pg. 92.
6. Motion for mistrial made for the first time. Pg. 95.
7. Request for instruction to disregard made for the first time. Pg. 96.
8. Trial court gives instruction to disregard. Pg. 97.
9. The trial court also gave an instruction to disregard in the charge. CR 151.

With this foundation of what the record shows, let us revisit *Young* and *Lankston.* Remember the majority relies upon *Young* as the basis that Griggs preserved this issue for review because he moved for a mistrial 40 pages (and two witnesses) after the first potentially objectionable evidence was introduced, and during these 40 pages, four potentially objectionable references were made. The last potentially objectionable evidence occurred in the record 14 pages before the motion for mistrial.

Does *Young* speak to this? You bet it does. Does the majority ignore this part of *Young?* You bet it does.

The Court of Criminal Appeals in *Young* anticipated the very problem the majority is exploiting to reverse this case. The Court of Criminal Appeals stated:

We recognize the potential for abuse of a ruling allowing a motion for mistrial without a preceding objection or request for instruction to disregard. If a party delays [making the] motion for mistrial and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on this untimely motion for mistrial than on an untimely objection. This appellant's [Young's] motion for mistrial was not so delayed.

*Id.* at 70.

Griggs's motion for mistrial was delayed. Therefore, Griggs "could no more rely on the untimely motion for mistrial than on an untimely objection." *See id.* For this reason, I would not reach the issue used by the majority to reverse this case. Without preservation of the issue, nothing is presented for review.

And by its failure to now cite or discuss *Lankston,* the case relied upon in the earlier opinion, the reader may assume the majority believes the Court of Criminal Appeals has changed the rule in *Young.* This assumption would be wrong for two reasons:

1. The rule in *Lankston* and *Young* are essentially the same rule, and

2. *Young* does not mention *Lankston* and does not overrule it.

We do not have to put *Lankston* down to pick up *Young*. These two opinions are not inconsistent and *Young* does not "change the rule" regarding preservation. Even after *Young*,

> ("all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial court judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.").

*Griggs v. State*, No. 10–03–00286–CR, 2005 WL 241217, *4, 2005 Tex.App. LEXIS 866, *8 (Tex.App.-Waco Feb. 2, 2005) (*withdrawn*, April 13, 2005).

What the majority's holding supports, is that if the trial court had done nothing, there would be no preservation; but, because the trial court on its own raised the issue, there is reversible error. Am I the only one confused by that?

But let us assume for a moment that the issue was preserved for review. We must then ask whether the comments were such that an instruction to disregard would have cured the prejudice, if any. *Young* at 71. Without unnecessarily lengthening this dissenting opinion, when I consider the same factors and surrounding circumstances as the Court of Criminal Appeals did in *Young*, I reach the same conclusion in this case that they did in *Young*. *Id.* at 71–72. A timely instruction could have cured the prejudicial effect, if any.

This is particularly true if the request and instruction had been made after the first potentially objectionable comment, or even the second. Indeed, I believe the instruction could remove the prejudicial effect, if any, even when given, as it was,

after the testimony of the two witnesses and again in the charge.

The majority makes no real analysis of whether this is the type comment, in the context of this entire trial, for which an instruction could have been effective in removing the prejudicial effect, if any, so that the defendant could still receive a fair trial. The majority seems to assume the jury would have been more interested in convicting someone, anyone, for the rape of multiple women, rather than the actual perpetrator. Balderdash. For obvious reasons, the jury would have no interest in convicting anyone other than the actual perpetrator, especially if the concern was a serial criminal. Conviction of anyone else would not stop future crime by the actual perpetrator and would cause the investigation to find the actual perpetrator to stop, thus leaving the actual perpetrator free to roam the streets.

## CONCLUSION

In this case, a conscientious trial court judge made sure the defendant obtained a fair trial. As a result of the trial court's action, including raising the issue and instructing the jury, a fair trial, possibly not a perfect trial, was obtained. The trial court weighed all the facts and circumstances regarding whether a mistrial was warranted, denied the late request, and gave an instruction. If the majority was present for the entire trial, maybe they would come to the same conclusion the trial court did, that a mistrial was unnecessary.

I was not there. On this *record*, the issue was not preserved, and the trial court certainly did not abuse its discretion in denying the motion for mistrial.

I dissent.