**Gregory Barnett GRIGGS, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0727–05.**

Court of Criminal Appeals of Texas.

Jan. 31, 2007.

Jacob D. Davis, Corsicana, for Appellant.

Stephen A. Keathly, Crim. D.A., Corsicana, Matthew Paul, State's Attorney, Austin, for the State.

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The court of appeals held that the trial court had erred in denying appellant's motion for mistrial. We reverse.

The relevant facts, as reflected in the case record, are as follows. On June 13, 2002, a Navarro County grand jury returned an indictment charging appellant with the aggravated sexual assault of an elderly woman. *See* Tex. Pen.Code § 22.021(a)(1)(A)(i). On August 7, 2003, appellant filed a pretrial motion in limine asking the trial court not to admit any evidence of extraneous offenses unless the State first demonstrated that such evidence had logical relevance apart from showing his propensity to commit crime. *See* Tex.R. Evid. 404(b). Later that day, at a pretrial hearing, the State agreed not to offer evidence of extraneous offenses without first approaching the bench and obtaining a ruling thereon.

On August 12, 2003, the State brought appellant to trial before a petit jury on his plea of not guilty. During the course of the guilt stage, the trial court instructed the State to take care, when questioning its witnesses, not to "get into extraneous matters that could result in reversal of this case [on appeal] should the jury return a verdict of guilt." The trial court expressed particular concern about any mention of other sexual assaults allegedly committed by appellant. Despite the trial court's concern, the following transpired during the State's direct examination of its witness Richard Gravitt, who had been appellant's cellmate in the Navarro County Jail:

Q: All right. Now, what statement did Mr. Griggs give to you [while you were cellmates]? Amongst other things, tell the jury what Mr. Griggs told you.

A: *That he raped some older women,* and it went on quite a bit farther than that, you know, that—

Q: Did he make a statement to you that he raped an old woman?

A: Yes, sir.

* * *

Q: Did he or did he not admit to raping an elderly lady to you?

A: Yes, sir.

Q: What did he say with regards to just that—that point?

A: Just as I said in the statement, *that he had raped older women—*

Q: No, no. I said—

A: An older lady and that they [the police]—they was trying to catch him and they didn't have nothing on him, he had it beat, I mean, and it went on and on, and you really got tired of hearing it.

* * *

The State's next witness was Jason Grant, a detective with the Corsicana Police Department who had been involved in the investigation of this case. During the State's direct examination of Grant, the following transpired:

Q: What did [Richard] Gravitt tell you in respect to the investigation of the rape of [the victim]?

A: He told me that he was in the cell with Greg Griggs and *Greg had told him that he had raped three elderly—*

Q: Hold on. Mr.—Mr. Grant, with specifics as to Mr. Griggs only, what did Mr. Gravitt tell you?

A: *That Griggs told him that he had raped three elderly women in his neighborhood* and that he—he had told him about a towel and a screwdriver and that he was paranoid that we were trying to get his DNA so we could catch him.

* * *

At the conclusion of Grant's testimony, the trial court excused the jury, and the following transpired:

The Court: Now, before [the next witness] testifies, I'm going to reiterate what I've said on a previous occasion to counsel in this case. I've done my best to avoid the inadvertent admission of extraneous offenses in this case. This happened with the last . . . two witnesses. Mr. Gravitt referred to a statement made by the defendant that he had raped women. Jason Grant made reference to the statement of Gravitt that he had raped three women.

I'm not—I'm not sure what action I should take at this point. I think—I think the conduct of the witnesses has jeopardized this case to a large extent. I am—I am willing to take whatever mitigating action that counsel believes is necessary. I can instruct the jury that they're not to—they're not to consider any evidence of extraneous acts or offenses other than the particular offense that is the subject of this case. . . . But I'm looking for some instruction from counsel at this time, because in my opinion the court's rulings and instructions have been violated at this point. You tell me what you want to do.

* * *

The State: Defense counsel has the burden of objecting when extraneous matters are brought forward . . . , and I have seen case after case of extraneous offenses admissions not overruled because of not [sic] proper objection by defense counsel. So it's not, you know, it's not the court's duty of—the court's duty is to—is to maintain the fairness of the proceeding, but defense counsel has

a certain duty to preserve objection, and that was not made.

Now, if you want to make . . . a limiting instruction to this jury as to matters that were introduced as far as extraneous matters, I would go ahead and suggest to the court that that is permissible.

* * *

Defense Counsel: Your Honor, I think in order to protect the record, I need to make a motion for a mistrial—
State: Well, you know.
Defense Counsel:—at this time and ask the court to make a ruling.
The Court: I'm not going to grant a motion for a mistrial at this time.

* * *

When the jurors returned to the courtroom, the trial court instructed them not to "consider any testimony or evidence of alleged crimes or acts other than those which may relate to the alleged assault" upon the victim in this case. The jurors subsequently found appellant guilty as charged in the indictment, and assessed his punishment at imprisonment for life and a $10,000 fine.

■ On direct appeal, appellant argued that the trial court had erred in denying his motion for mistrial. Appellant argued that this complaint had been preserved for appellate review because (1) he had filed a motion in limine pertaining to the admission of extraneous offenses and (2) the State had agreed to abide by that motion in limine.[1] Appellant's argument continued:

"Had appellant's counsel objected each time the State's attorney and his witnesses violated [the motion in limine],

appellant would have been even further harmed by [the] introduction of the inadmissible evidence by drawing immediate attention to such. Instead, appellant's counsel did the only thing that was feasible to protect his client's rights, which was to make the proper motion for a mistrial when inadmissible and harmful evidence was thrown into the jury's purview in direct violation of the [trial] court's instructions."

The State argued in response that appellant's complaint had not been preserved for appellate review because his motion for mistrial had been made too late.

The court of appeals, with its chief justice dissenting, agreed with appellant that the trial court had erred, and reversed the trial court's judgment of conviction. *Griggs v. State*, 167 S.W.3d 74, 78–79 (Tex. App.-Waco 2005). With respect to the preservation-of-complaint issue, the court of appeals reasoned as follows:

"The State argues that Griggs failed to preserve his complaint . . . because he did not timely object to the testimony [of Gravitt and Grant]. Generally, a timely objection to a violation of a motion in limine is necessary to preserve a complaint of error. However, an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim.App.2004). At the conclusion of the two witnesses' testimony, Griggs made a motion for mistrial . . . The trial court denied the motion for mistrial and instructed the jury before the next witness was called. Under these circumstances, Grigg's actions were sufficient to preserve the complaint about the mis-

---

1. A motion in limine, whether granted or denied, preserves nothing for appellate review. *See Manns v. State*, 122 S.W.3d 171, 190 (Tex.Crim.App.2003); G. Dix & R. Dawson, *Texas Practice: Criminal Practice and Procedure* § 42.152 (2d ed.2001).

trial ruling. *See id.* (If an instruction could not have enabled the continuation of the trial by an impartial jury, 'the only suitable remedy is a mistrial, and a motion for mistrial is the only essential prerequisite to presenting the complaint on appeal.')." *Id.* at 78 (some citations omitted; parenthetical material in original).

The dissenting chief justice, also relying upon our decision in *Young,* argued that appellant's complaint had not been preserved for appellate review because his motion for mistrial had not been timely. *Griggs v. State,* 167 S.W.3d at 84 (Gray, C.J., dissenting).

▇ The State later filed a petition for discretionary review, which we granted. *See* Tex.R.App. Proc. 66.3(e). In its petition and brief, the State argues that the court of appeals erred in holding that appellant had preserved his complaint for appellate review because appellant's motion for mistrial had been untimely. The State, like the chief justice in the court below, relies upon our decision in *Young.*

▇ Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion. In accordance with Rule 33.1, a motion for mistrial must be both timely and specific. *Young v. State,* 137 S.W.3d at 65–66. A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Wilkerson v. State,* 881 S.W.2d 321, 326 (Tex. Crim.App.1994) (citing *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990)); *Williams v. State,* 427 S.W.2d 868, 873 (Tex.Crim.App.1967). *Accord,* 23 C.J.S. *Criminal Law* § 1388 (1989).

In the instant case, the grounds for appellant's motion for mistrial first became apparent during Gravitt's testimony. Yet, appellant failed to move for a mistrial until after both Gravitt and Grant had concluded their testimony. Under these circumstances, appellant's motion for mistrial was untimely and failed to preserve his complaint for appellate review. Therefore, the court of appeals erred in addressing that complaint.

Appellant argues, as he did in the court of appeals, that his counsel did all that was required given the circumstances at trial. However, when Gravitt first testified concerning the alleged extraneous offenses, defense counsel could have (1) asked to approach the bench, (2) asked the trial court to excuse the jury from the courtroom, (3) objected to Gravitt's testimony concerning the alleged extraneous offenses, (4) asked the trial court to instruct Gravitt and all future witnesses not to mention any alleged extraneous offenses, (5) asked the trial court to instruct the jury to disregard Gravitt's testimony concerning the alleged extraneous offenses, and (6) moved for a mistrial if he believed that no instruction could be effective. Defense counsel did none of these things. Defense counsel did cross-examine both Gravitt and Grant, but he did nothing further until the trial court, on its own motion, brought up the matter of Gravitt's and Grant's inappropriate testimony.

In *Young v. State,* 137 S.W.3d at 70, we noted that "[i]f a party delays [his] motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection." The scenario we described in *Young* was exactly what happened in this case.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

MEYERS, J., filed a dissenting opinion.

WOMACK, J., dissented without written opinion.

JOHNSON, J., concurred in the result.

MEYERS, J., filed a dissenting opinion.

Appellant filed a motion in limine, and the court held a pretrial hearing, during which the State agreed to not offer evidence of extraneous offenses without approaching the bench and obtaining a ruling. Instead of honoring that agreement, two of the State's witnesses testified regarding extraneous offenses. When certain prohibited testimony was given by the witnesses, the judge excused the jury and cautioned the State for violating the court's rulings and instructions. The judge asked the parties what he should do, and Appellant requested a mistrial.

In *Young,* we discussed the purpose of specific objections as affording the trial judge an opportunity to rule on the issue and providing the other party time to remove objectionable evidence and to present proper testimony. We also quoted *Saldano,* stating that objections promote the prevention of errors. *See Young v. State,* 137 S.W.3d 65, 69 (Tex.Crim.App. 2004), citing *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977) and *Saldano v. State,* 70 S.W.3d 873, 887 (Tex.Crim. App.2002). We went on to say that "an objection serves as a preemptive measure. Because it informs the judge and opposing counsel of the potential for error, an objection conserves judicial resources by prompting the prevention of foreseeable, harmful events." *Young,* 137 S.W.3d at 69. I agree that an objection can serve these purposes; however, so can a pretrial motion in limine, which Appellant filed in this case. A pretrial motion in limine is a preemptive measure which prevents foreseeable, harmful events even more effectively than a timely objection after a viola-

tion. The motion in limine allowed the judge to rule on the issue, provided notice to the State about what evidence and testimony would violate the trial court's instructions, and should have prevented erroneous testimony. Appellant filed the motion to prevent the inadmissible, objectionable testimony from being elicited by the State. The motion for mistrial was the proper corrective measure in this case because the harm that occurred when the witnesses violated the court's instructions was not curable.

When witness testimony repeatedly violates pretrial rulings and the court's instructions, the defendant is entitled to request a mistrial. Under the circumstances in this case, Appellant's motion for mistrial was timely, and preserved error because objecting after the improper testimony could not fulfill the purpose of the objection, which is to prevent the jury from hearing the inadmissible evidence. *See Young,* 137 S.W.3d at 70.

As for whether the motion should have been granted, the witnesses' testimony was so bad that the trial judge took it upon himself to excuse the jury and inform the parties that "the conduct of the witnesses has jeopardized this case to a large extent." This is all that was required to preserve the right to request a mistrial. The court of appeals properly focused on the prejudice to the defendant resulting from the improper testimony. The court stated:

> The testimony was not only heard by the jury but was repeated by two State's witnesses, one of whom was the investigating officer in the case. Furthermore, the testimony was given in violation of the court's earlier ruling. Afterward, the trial judge himself expressed concern that the testimony of the witnesses had jeopardized the trial.

The impression produced in the minds of the jurors—that Griggs might be a serial rapist of elderly women—was highly prejudicial and could not be cured by an instruction to disregard. Given the lack of direct identification of the perpetrator of the crime charged, and because the prosecution relied heavily upon Griggs's alleged admissions to his fellow inmates, the danger that the jury may have been swayed by the inadmissible testimony was particularly high. Under these circumstances, the trial court abused its discretion in denying Griggs's motion for mistrial.

*Griggs,* 167 S.W.3d 74, 79 (Tex. App.–Waco 2005). The court of appeals got it right in this case. Therefore, I respectfully dissent.