IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-0727-05






GREGORY BARNETT GRIGGS, Appellant



v.



THE STATE OF TEXAS





ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


NAVARRO COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and Price,
Keasler, Hervey, and Cochran, JJ., joined. Meyers, J., filed a dissenting
opinion. Womack, J., dissented without written opinion. Johnson, J., concurred
in the result.



 The court of appeals held that the trial court had erred in denying appellant's motion for
mistrial. We reverse.

 The relevant facts, as reflected in the case record, are as follows. On June 13, 2002, a
Navarro County grand jury returned an indictment charging appellant with the aggravated sexual
assault of an elderly woman. See Tex. Pen. Code § 22.021(a)(1)(A)(i). On August 7, 2003,
appellant filed a pretrial motion in limine asking the trial court not to admit any evidence of
extraneous offenses unless the State first demonstrated that such evidence had logical relevance apart
from showing his propensity to commit crime. See Tex. R. Evid. 404(b). Later that day, at a pretrial
hearing, the State agreed not to offer evidence of extraneous offenses without first approaching the
bench and obtaining a ruling thereon.

 On August 12, 2003, the State brought appellant to trial before a petit jury on his plea of not
guilty. During the course of the guilt stage, the trial court instructed the State to take care, when
questioning its witnesses, not to "get into extraneous matters that could result in reversal of this case
[on appeal] should the jury return a verdict of guilt." The trial court expressed particular concern
about any mention of other sexual assaults allegedly committed by appellant. Despite the trial
court's concern, the following transpired during the State's direct examination of its witness Richard
Gravitt, who had been appellant's cellmate in the Navarro County Jail:

 Q: All right. Now, what statement did Mr. Griggs give to you [while you were
cellmates]? Amongst other things, tell the jury what Mr. Griggs told you.

 

 A: That he raped some older women, and it went on quite a bit farther than that, you
know, that -

 

 Q: Did he make a statement to you that he raped an old woman?

 

 A: Yes, sir.

 

 * * *


 

 Q: Did he or did he not admit to raping an elderly lady to you?

 

 A: Yes, sir.

 

 Q: What did he say with regards to just that - that point?

 

 A: Just as I said in the statement, that he had raped older women -

 

 Q: No, no. I said -

 

 A: An older lady and that they [the police] - they was trying to catch him and they
didn't have nothing on him, he had it beat, I mean, and it went on and on, and you
really got tired of hearing it.


* * *



 The State's next witness was Jason Grant, a detective with the Corsicana Police Department
who had been involved in the investigation of this case. During the State's direct examination of
Grant, the following transpired:

 Q: What did [Richard] Gravitt tell you in respect to the investigation of the rape of
[the victim]?

 

 A: He told me that he was in the cell with Greg Griggs and Greg had told him that
he had raped three elderly -

 

 Q: Hold on. Mr. - Mr. Grant, with specifics as to Mr. Griggs only, what did Mr.
Gravitt tell you?

 

 A: That Griggs told him that he had raped three elderly women in his neighborhood
and that he - he had told him about a towel and a screwdriver and that he was
paranoid that we were trying to get his DNA so we could catch him.


* * *



 At the conclusion of Grant's testimony, the trial court excused the jury, and the following
transpired:

 The Court: Now, before [the next witness] testifies, I'm going to reiterate what I've
said on a previous occasion to counsel in this case. I've done my best to avoid the
inadvertent admission of extraneous offenses in this case. This happened with the
last . . . two witnesses. Mr. Gravitt referred to a statement made by the defendant that
he had raped women. Jason Grant made reference to the statement of Gravitt that he
had raped three women.

 I'm not - I'm not sure what action I should take at this point. I think - I think
the conduct of the witnesses has jeopardized this case to a large extent. I am - I am
willing to take whatever mitigating action that counsel believes is necessary. I can
instruct the jury that they're not to - they're not to consider any evidence of
extraneous acts or offenses other than the particular offense that is the subject of this
case. . . . But I'm looking for some instruction from counsel at this time, because in
my opinion the court's rulings and instructions have been violated at this point. You
tell me what you want to do.

 

 * * *


 

 The State: Defense counsel has the burden of objecting when extraneous matters are
brought forward . . . , and I have seen case after case of extraneous offenses
admissions not overruled because of not [sic] proper objection by defense counsel. 
So it's not, you know, it's not the court's duty of - the court's duty is to - is to
maintain the fairness of the proceeding, but defense counsel has a certain duty to
preserve objection, and that was not made.

 Now, if you want to make . . . a limiting instruction to this jury as to matters
that were introduced as far as extraneous matters, I would go ahead and suggest to
the court that that is permissible.

 

 * * *


 

 Defense Counsel: Your Honor, I think in order to protect the record, I need to make
a motion for a mistrial -

 

 State: Well, you know.

 

 Defense Counsel: - at this time and ask the court to make a ruling.

 

 The Court: I'm not going to grant a motion for a mistrial at this time.


* * *



 When the jurors returned to the courtroom, the trial court instructed them not to "consider
any testimony or evidence of alleged crimes or acts other than those which may relate to the alleged
assault" upon the victim in this case. The jurors subsequently found appellant guilty as charged in
the indictment, and assessed his punishment at imprisonment for life and a $10,000 fine.

 On direct appeal, appellant argued that the trial court had erred in denying his motion for
mistrial. Appellant argued that this complaint had been preserved for appellate review because (1)
he had filed a motion in limine pertaining to the admission of extraneous offenses and (2) the State
had agreed to abide by that motion in limine. (1) Appellant's argument continued:

 "Had appellant's counsel objected each time the State's attorney and his witnesses
violated [the motion in limine], appellant would have been even further harmed by
[the] introduction of the inadmissible evidence by drawing immediate attention to
such. Instead, appellant's counsel did the only thing that was feasible to protect his
client's rights, which was to make the proper motion for a mistrial when inadmissible
and harmful evidence was thrown into the jury's purview in direct violation of the
[trial] court's instructions."


The State argued in response that appellant's complaint had not been preserved for appellate review
because his motion for mistrial had been made too late. 

 The court of appeals, with its chief justice dissenting, agreed with appellant that the trial court
had erred, and reversed the trial court's judgment of conviction. Griggs v. State, 167 S.W.3d 74, 78-79 (Tex.App.-Waco 2005). With respect to the preservation-of-complaint issue, the court of appeals
reasoned as follows:

 "The State argues that Griggs failed to preserve his complaint . . . because he
did not timely object to the testimony [of Gravitt and Grant]. Generally, a timely
objection to a violation of a motion in limine is necessary to preserve a complaint of
error. However, an objection after an event occurs cannot fulfill the purpose of the
objection, which is to prevent the occurrence of the event. Young v. State, 137
S.W.3d 65, 70 (Tex.Crim.App. 2004). At the conclusion of the two witnesses'
testimony, Griggs made a motion for mistrial . . . The trial court denied the motion
for mistrial and instructed the jury before the next witness was called. Under these
circumstances, Grigg's actions were sufficient to preserve the complaint about the
mistrial ruling. See id. (If an instruction could not have enabled the continuation of
the trial by an impartial jury, "the only suitable remedy is a mistrial, and a motion for
mistrial is the only essential prerequisite to presenting the complaint on appeal.")." 
Id. at 78 (some citations omitted; parenthetical material in original).


The dissenting chief justice, also relying upon our decision in Young, argued that appellant's
complaint had not been preserved for appellate review because his motion for mistrial had not been
timely. Griggs v. State, 167 S.W.3d at 84 (Gray, C.J., dissenting).

 The State later filed a petition for discretionary review, which we granted. See Tex. R. App.
Proc. 66.3(e). In its petition and brief, the State argues that the court of appeals erred in holding that
appellant had preserved his complaint for appellate review because appellant's motion for mistrial
had been untimely. The State, like the chief justice in the court below, relies upon our decision in
Young.

 Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as a prerequisite to
presenting a complaint for appellate review, the record must show that the complaint was made to
the trial court by a timely and specific request, objection, or motion. In accordance with Rule 33.1,
a motion for mistrial must be both timely and specific. Young v. State, 137 S.W.3d at 65-66. A
motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. 
Wilkerson v. State, 881 S.W.2d 321, 326 (Tex.Crim.App. 1994) (citing Johnson v. State, 803 S.W.2d
272, 291 (Tex.Crim.App. 1990)); Williams v. State, 427 S.W.2d 868, 873 (Tex.Crim.App. 1967). 
Accord, 23 C.J.S. Criminal Law § 1388 (1989).

 In the instant case, the grounds for appellant's motion for mistrial first became apparent
during Gravitt's testimony. Yet, appellant failed to move for a mistrial until after both Gravitt and
Grant had concluded their testimony. Under these circumstances, appellant's motion for mistrial was
untimely and failed to preserve his complaint for appellate review. Therefore, the court of appeals
erred in addressing that complaint.

 Appellant argues, as he did in the court of appeals, that his counsel did all that was required
given the circumstances at trial. However, when Gravitt first testified concerning the alleged
extraneous offenses, defense counsel could have (1) asked to approach the bench, (2) asked the trial
court to excuse the jury from the courtroom, (3) objected to Gravitt's testimony concerning the
alleged extraneous offenses, (4) asked the trial court to instruct Gravitt and all future witnesses not
to mention any alleged extraneous offenses, (5) asked the trial court to instruct the jury to disregard
Gravitt's testimony concerning the alleged extraneous offenses, and (6) moved for a mistrial if he
believed that no instruction could be effective. Defense counsel did none of these things. Defense
counsel did cross-examine both Gravitt and Grant, but he did nothing further until the trial court, on
its own motion, brought up the matter of Gravitt's and Grant's inappropriate testimony.

 In Young v. State, 137 S.W.3d at 70, we noted that "[i]f a party delays [his] motion for
mistrial, and by failing to object allows for the introduction of further objectionable testimony or
comments and greater accumulation of harm, the party could no more rely on the untimely motion
for mistrial than on an untimely objection." The scenario we described in Young was exactly what
happened in this case.

 We reverse the judgment of the court of appeals and affirm the judgment of the trial court.


DELIVERED JANUARY 31, 2007

PUBLISH
1. A motion in limine, whether granted or denied, preserves nothing for appellate review. 
See Manns v. State, 122 S.W.3d 171, 190 (Tex.Crim.App. 2003); G. Dix & R. Dawson, Texas
Practice: Criminal Practice and Procedure § 42.152 (2d ed. 2001).