

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-383-CR

THOMAS FRANK CHERRY, JR.                                            APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In two points, Appellant Thomas Frank Cherry appeals from his conviction for aggravated robbery with a deadly weapon, complaining that the trial court erred by admitting evidence of an alleged sexual assault during punishment. We affirm.

------------

[1] ... *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Cherry was charged with aggravated robbery and aggravated sexual assault alleged to have occurred on May 6, 2007. In July 2008, Cherry pleaded guilty to aggravated robbery with a deadly weapon but maintained that he did not commit aggravated sexual assault.

Before the punishment phase of the aggravated robbery trial began, and outside the presence of the jury, Cherry asked the trial court for an instruction in accordance with his motion in limine. Specifically, Cherry's defense counsel argued as follows:

> . . . I just wanted to ask the Court for an instruction in accordance with the motion [in] limine that the Court granted on December 10th, 2007. Basically, it's my understanding that the State had chosen to try these cases separately in an effort to stack sentences on the Defendant. We are asking the Court to instruct the State not to reference in accordance with our part B of the motion in limine under extraneous offenses any—he's accused of robbery and the—what he's alleged to have taken is money. All the investigation that I have been able to perform on this, you know, according with the State's own reports, the money was taken before any alleged aggravated sexual assault was committed, therefore, I'm asking, to avoid irreparable harm to my client, I'm asking for the Court to instruct the State not to reference the alleged sexual assault which occurred after the robbery which the Defendant pleaded guilty to.

After hearing arguments from both sides, the trial court stated that it would allow the State to present the evidence.

2

During the State's opening statement, the prosecutor stated that when two teenagers, Brittany and CJ, gave Cherry a ride in Brittany's car, he pulled a gun on them, forced them out of the car, and robbed Brittany of her money, and then "[Cherry] went back to where Brittany was and he forced her at gunpoint back into the vehicle and took her to yet another rural location here in Cooke County where he forced her at gunpoint to perform oral sex on him." Defense counsel objected, stating "at this time[,] I'm going to reiterate any previous objections and move to strike and ask for a mistrial." The trial court overruled his objection, denied the motion to strike, and denied the request for a mistrial.

At trial, the State called Brittany, who testified that she was seventeen when she went to the car wash on Highway 82 with her boyfriend, CJ, on May 6, 2007. She stated that Cherry approached CJ and asked if they could give him a ride, which they did. When they left the car wash, Brittany was driving, CJ was in the front passenger seat, and Cherry was in the back seat. Not long after they left the car wash, Cherry pulled out a gun and held it to CJ's head.

Although she was "scared and frozen with fear," Brittany kept driving and eventually ended up on a dirt road where Cherry made them get out of the car. Cherry asked if they had any money, and Brittany gave him $20 or $25 from her purse because he had his gun pointed at them. He next made Brittany and

3

CJ walk in opposite directions from each other, and he got into Brittany's car and turned it around. Cherry drove past Brittany, stopped, and made her get back into the car, threatening her with the gun. Cherry drove while pointing the gun at Brittany, and he made her perform oral sex on him as he drove. Brittany testified that Cherry also forced her to pull her pants down, that he had penetrated her vagina with his fingers, and that he then licked his fingers. He eventually stopped the car by a bridge, let Brittany get out, and told her to never give strangers a ride.

When Cherry let her out of the car, she tried to make herself throw up because she did not know if Cherry had a sexually transmitted disease. Brittany testified that after Cherry drove away in her car, she began walking back up the highway when a couple stopped to help her. She told them what had occurred, and the woman in the car let Brittany use her phone to call her mother and then called 911. After a policeman arrived with CJ in his car, they went back to the car wash and then to the hospital, where a sexual assault examination was performed. Two days later, Brittany picked Cherry's photo out of six-person photo lineup. She testified that a few days later authorities notified her that they had recovered her car but she could not bear to drive it anymore.

4

On cross-examination, Brittany testified that after Cherry forced her back into the car they drove for three minutes or so at high speed with her head down (performing oral sex on Cherry) before she could see the road again, but that three minutes was an estimate because "I wasn't keeping time." By the time she could see out of the car, they were back on the highway.

The State also called CJ, who testified that Brittany and he went to the car wash where they saw Cherry, whom CJ had never seen before. He spoke to Cherry as they were both using the vacuum at the car wash, and Cherry asked them for a ride because his car would not start. They all got in the car, with Cherry in the back, and after they pulled out of the car wash, Cherry pulled a gun and pointed it at CJ's head. CJ testified that the small black gun tendered by the State looked like the gun Cherry used to threaten them. Cherry told Brittany where to drive, eventually stopping down a dirt road, where Cherry ordered them to get out of the car and made Brittany give him her money.

CJ testified that after Cherry got Brittany's money, he told them to walk in different directions away from the car. As CJ walked, he looked back and saw Cherry drive back toward Brittany and stop the car next to her. He saw Brittany get in, testifying, "she was forced in the car." As soon as the car drove off, CJ pulled out his cell phone and called his mother, then 911. He also described how officers found him, drove to where they found Brittany, went

5

back to the car wash, and later took Brittany to the hospital. CJ could not positively identify Cherry from a photo lineup, although he thought he recognized him, but he positively identified him in court.

Cooke County Deputy Sheriff Tom Stephens testified that he was working on the date of the offense and heard a radio broadcast regarding the robbery and a description of a stolen maroon SUV heading southbound on Highway 51. Stephens saw the vehicle and started to make an investigative stop but lost the vehicle in traffic. After losing the vehicle, Stephens returned to Gainesville and talked to a visibly-shaken Brittany about the sexual assault. On cross-examination, Stephens was asked about distances on the dirt road and highways where the offense occurred and agreed with defense counsel's assertion that travel time from the dirt road to where Brittany was found was "not that long."

Texas DPS forensic scientist Kimberly Mack testified that she tested the DNA from the rape kit submitted for Brittany, but the test was negative for semen. She testified that in cases involving forced oral sex, this was not unexpected because semen does not survive long in the oral cavity and because people tend to spit or swallow, resulting in loss of the evidence. Mack explained that the length of time between the assault and exam, whether the victim ate or drank between the assault and the exam, and the particular

6

procedure followed by the nurse collecting the sample could all affect the outcome of the test.

The jury assessed punishment at seventy five years' confinement and a $10,000 fine, and the trial court sentenced Cherry accordingly. This appeal followed.

### III. Motion in Limine

In his first point, Cherry complains that the trial court erred by admitting evidence as to the alleged aggravated sexual assault despite Cherry's motion in limine, his objection to the introduction of said evidence, his motion to strike, and his motion for mistrial.

With regard to his complaint regarding the admission of evidence despite his motion in limine, it is well settled that motions in limine do not preserve error. *See Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 282 (2007); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Romo v. State*, 577 S.W.2d 251, 252 (Tex. Crim. App. 1979). This is true whether the motion is granted or denied. *Willis v. State*, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 908 (1990); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). "A ruling on a motion in limine does not purport to be one on the

merits but one regarding the administration of the trial."[2]  *Harnett*, 38 S.W.3d at 655.

Furthermore, "'[f]or error to be preserved with regard to the subject matter of [a] motion in limine, it is absolutely necessary that an objection be made at the time *when the subject is raised during the trial.*'"  *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994) (emphasis added) (quoting *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App.1985)), *cert. denied*, 513 U.S. 1060 (1994); *see also Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972) ("[F]or error to be preserved on appeal with regard to the admission of inadmissible evidence, objection thereto should be made at the time the evidence is offered.").  An examination of the record reveals that no objection was made to the admission of evidence regarding the sexual

---

[2] ... A review of Cherry's motion in limine reflects that he asked the trial court to enter an order instructing the State not to mention, allude, or refer to, in any manner, any extraneous offenses by Cherry in the jury's presence, and "[p]rior to specific mention of extraneous offenses, a hearing should be immediately held outside the presence of the jury" for a determination of, among other things, the purpose for which the extraneous offense was offered, its relevance, whether it could be shown beyond a reasonable doubt that Cherry committed the alleged conduct, and whether the probative value of the evidence was outweighed by danger of unfair prejudice and confusion of the issue.  Cherry received his requested hearing outside the jury's presence, and then the trial court decided to allow the State to present the complained-of evidence.

assault when the evidence was offered through Brittany's testimony.[3]  Hence, nothing was preserved for our review, whether through the motion in limine or through objection to the admission of the evidence.  *See* Tex. R. Evid. 103(a)(1) (requiring party to timely object when evidence is admitted); Tex. R. App. P. 33.1(a)(1)(A) (requiring timely and specific objection stating grounds with sufficient clarity to advise trial court of basis for complaint).

Finally, with regard to the motions to strike and for mistrial made during the State's opening statements, the State's sexual assault evidence was admissible under article 37.07, section 3(a)(1) of the code of criminal

---

[3] ... Specifically, Cherry did not object when Brittany testified, "[H]e made me perform oral on him," and he only objected on the question's form ("asked and answered") when the State asked, "And he forced you to put his penis in your mouth while he was driving down the road?"

procedure.[4]  As such, the trial court's rulings on Cherry's motions were correct.[5]  Cherry's first point is overruled.

## IV.  Sexual Assault Evidence

Cherry phrases his second point as follows:

---

[4]... Article 37.07, section 3(a)(1) of the code of criminal procedure allows the State to offer

> evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008).  The court's charge correctly instructed the jury on the burden of proof required by article 37.07, section 3(a)(1).

[5]... In support of his argument, Cherry cites *Mitchell v. State*, No. 14-96-00116-CR, 1998 WL 78122 (Tex. App.—Houston [14th Dist.] Feb. 26, 1998, no pet.) (not designated for publication), which discusses improper statements in jury arguments, and *Griggs v. State*, 213 S.W.3d 923 (Tex. Crim. App.), *cert. denied*, 128 S. Ct. 153 (2007), which discusses motions for mistrial. Neither the facts nor the holdings in these cases are germane to the issues presented here—Cherry's complaint about the prosecutor's comment during the State's opening statement was made after the trial court had ruled that the State could go into evidence of the aggravated sexual assault, and he subsequently failed to object to the admission of that evidence during the trial. *Cf. Griggs*, 213 S.W.3d at 927 (holding that appellant's motion for mistrial was untimely and failed to preserve his complaint for appellate review); *Mitchell*, 1998 WL 78122, at *3 (holding that appellant's motion for mistrial was properly denied when the court gave an instruction to disregard, even though appellant contended that the State's closing argument that he was a "violent, angry person" was clearly calculated to inflame the jury and was harmful).

> The Court erred in admitting evidence that did not substantially establish that aggravated sexual assault had occurred. Said evidence was not corroborated. Said evidence presented a strong possibility that the alleged assault could not have occurred. Furthermore the State of Texas failed to provide easily obtainable evidence to support the allegation of sexual assault. Said evidence created a substantial bias against defendant with regard to sentencing.

A trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003), *cert. denied*, 540 U.S. 1185 (2004). The reviewing court may reverse the trial court's decision only if the ruling is outside the zone of reasonable disagreement. *Id.*

During the punishment phase of a criminal trial, the State may offer into evidence any matter the trial court deems relevant to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). Evidence may be admitted as to the defendant's prior criminal record, his general reputation, his character, and to the circumstances of the offense for which he is being tried. *Id.* In addition, the State may introduce evidence of an extraneous crime or bad act provided the bad act is proven beyond a reasonable doubt to have been (1) an act committed by the defendant, or (2) an act for which he could be held criminally responsible. *Id.*; *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999); *see Huizar v. State*, 12 S.W.3d 479, 482–83 (Tex. Crim. App. 2000). Whether

11

an extraneous offense or bad act is established beyond a reasonable doubt is a question of fact for the jury, not a preliminary question of admissibility for the trial court. *See Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.). The trial court properly instructed the jury that before it could consider extraneous evidence in assessing punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to the defendant. *See Huizar*, 12 S.W.3d at 482–83. Considering the foregoing, we hold that the trial court did not abuse its discretion by admitting the evidence of aggravated sexual assault.

Furthermore, with regard to corroboration, although Cherry urges that under rule 803, "evidence of corroborating circumstances must clearly indicate trustworthiness," this is a hearsay rule. *See* Tex. R. Evid. 803 ("Hearsay Exceptions: Availability of Declarant Immaterial"). Rule 803(24) sets forth the requirement of corroboration when the hearsay statement at issue involves a *statement against interest*. *See* Tex. R. Evid. 803(24) (defining statement against interest as "[a] statement which was at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the

12

declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."). There are no hearsay issues presented by this case that meet rule 803(24)'s corroboration requirements.

Cherry further argues that the sexual assault could not have occurred because Brittany testified that it happened during a three-minute period when he was driving at high speed, the State did not test the car for bodily fluids, and the forensic expert found no evidence of semen, which, taken together, meant that the sexual assault was impossible and the court should have therefore excluded all evidence of it. Nonetheless, the jury was properly instructed regarding the State's burden of proof, and it was within the jury's province to weigh the evidence and determine whether the aggravated sexual assault was proven beyond a reasonable doubt. We overrule Cherry's second point.

V. Conclusion

Having overruled both of Cherry's points, we affirm the judgment of the trial court.

PER CURIAM

PANEL: MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 1, 2009

13