

IN THE
TENTH COURT OF APPEALS

No. 10-14-00107-CR

JAMES REID,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-672-C2

MEMORANDUM  OPINION

A jury convicted Appellant James Reid of three counts of indecency with a child by contact.  The child, S.M., was the daughter of Reid's girlfriend when the offenses allegedly occurred.  By the time of trial, Reid and S.M.'s mother had married.  The jury assessed Reid's punishment at sixteen years' imprisonment and a $5,000 fine for each count. The trial court ordered the sentences to run consecutively.  This appeal ensued.

## Prior Convictions During Guilt-Innocence Phase

In his first issue, Reid contends that the trial court abused its discretion by admitting evidence of his prior convictions during the guilt-innocence phase.

During the defense's case-in-chief, Vennitta Swinnie testified that she had been Reid's next-door neighbor for twelve years. Over the years, she had gotten to know Reid and his family members, and her son became like "family" to the children living with Reid. The children would come to her house to visit after school, and she and her son would go to Reid's house to visit on a regular basis, "[e]very day basically." Swinnie stated that S.M. seemed to have a normal relationship with both her mother and Reid. Reid and S.M.'s mother also have a daughter together, and Swinnie said that she seemed to have a normal relationship with her parents. Swinnie did not observe any problems.

Swinnie testified that in 2010 Reid and S.M.'s mother informed her of their wedding plans. She stated that she talked to S.M. about the plans. The State objected, however, when Reid's counsel sought to question Swinnie about whether she had heard any arguing between S.M. and someone else about the wedding and about whether S.M. had made any threats about bringing these charges. The trial court held a conference in chambers. During the conference, the State argued:

> Your Honor, just for expediency sake, I think that this witness has opened the door to the prior. She's saying she has a close relationship with him. She never saw anything wrong. She thought these people were family. I think we should be allowed to ask her, well, did he tell you he's a sex offender? He's a convicted sex offender. You were letting your kid go over there. And this is opinion testimony that he - - she's close with him, that her kid goes over there, they're like family, they talked about her wedding. I think that opens the door to his prior and whether or not she knew about it, to test her opinion of him.

Your Honor, also, the defense, in opening, said there's no opportunity. There's no opportunity for this offense because, um, there's always people there, they visitation [*sic*] all the time, I think is the word the defense is using. I think that opens the door to the prior where he's having - - he's raping women with other people in the house, you know, when other people are asleep. So, I think it goes to opportunity, too. I mean, she's saying she's close with him. I think we should be able to say, well, did he tell you he has a prior? He's a registered sex offender, Your Honor. He's registering at the address she lived next door to. And now she's coming here acting like he's - - you know, he's a great dad.

The trial court stated, "I will lift the Order in Limine with regard to the prior conviction."

The State then began its cross-examination of Swinnie, during which the State asked her if she was aware that Reid was a convicted sex offender before this case. Reid objected: "Your Honor, at this time, the State [*sic*] would object under Rule 404(b). This is extraneous offense evidence that should not be - - the defendant objects - - defendant objects under 404(b) and, uh, under 403, the balancing test. The probative value does not outweigh the prejudicial effect." The trial court overruled the objection. Swinnie replied that she did not know that Reid was a convicted sex offender at the time but that she found out about it years later. Nevertheless, she did not think her son was at risk. The State then asked Swinnie what she knew about Reid's "prior"? Reid again objected: "Your Honor, we would re-urge the objection and ask for a running objection on this issue." The trial court overruled the objection but stated, "I will allow a running objection." Swinnie replied that she did not know anything about Reid's prior, but she then reiterated that it did not change her opinion as to whether her son was safe.

After Swinnie testified, S.M.'s brother, J.M., testified on cross-examination that he was aware that Reid was a registered sex offender but that he did not know very much

about the prior case and that Reid had never talked to him about it.  The State specifically

questioned J.M. in part as follows:

> Q      So, were you aware that there was a houseful of people when
> he did those offenses?
>
> A      No, ma'am. …
>
> Q      Were you aware that there was [*sic*] multiple victims in the
> old case?
>
> A      No, ma'am, I was not.
>
> ….
>
> Q      Um, were you aware that it had to do with defenseless drunk
> women that were passed out?
>
> A      No, ma'am, I didn't.

Reid did not object to this testimony by J.M.

Reid also did not object when the State then questioned his son Michael

extensively about the prior conviction.  Only after Michael's testimony and a short recess

did Reid's counsel state, "Your Honor, the defense moves for a mistrial at this time based

on the highly prejudicial effect of the  - -"  At that point, the trial court denied the request.

After an intervening witness, S.M.'s mother then also testified extensively about

Reid's prior conviction during cross-examination by the State.  The State questioned

S.M.'s mother in part as follows:

> Q      Okay.  What did the defendant tell you that he did?
>
> A      He told me  - -  well, he didn't tell me, Ms. Finkinbinder put a
> flyer in my car seat when I was going through my divorce and letting me
> know what he had done.

Q      Okay.  So, have you talked to the defendant about his prior offense - -

A      Yes, I have.

Q      - - when he was 28 years old?  And what did he say?

A      He said that he was set up with two older girls about - -  you know, he got drunk and they set him up on it.

Q      Okay.  So now he was set up?

A      Yes.

Q      You're aware he had a jury trial?

A      I was not there.  I didn't know him at the time.

Q      Have you talked about the offense with your husband?

A      Yes.

Q      The person you let around your children unsupervised?

A      Yes.

Q      And what did he tell you about the offense?

A      He told me what had happened.  He told me that he was set up with two girls that did it.  And I talked to his probation officer from, uh, New York.

Q      Okay.  And - -  so you talked to his probation officer in New York; is that correct?

A      Yes, because I had CPS called on me.  And they come down there and questioned my kids about him living there.  And [S.M.] was one of them there, too, when they questioned her about - -  about, you know, his past and stuff.  And she knew the past.

Q      And you were told at that point he was at a high risk to re-offend because he wouldn't take responsibility?

Only then did Reid "object to the relevance and the materiality of this line of questioning and to this specific question." Reid also re-urged his 404(b) and 403 objection. The trial court overruled the objections, and the State asked S.M.'s mother several more questions about the prior conviction.

Finally, after both sides rested and closed, Reid's counsel stated that he would "like to elaborate and re-urge the Motion for Mistrial and point out that the specific reason and basis for the Motion for Mistrial is that, uh, the extraneous offense evidence was allowed." Following a brief discussion, the trial court denied the request.

First, Reid forfeited his complaint as to J.M.'s, Michael's, and the unobjected-to portion of S.M.'s mother's testimony. To preserve a complaint for appellate review, the record must show that the appellant made the complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the appellant sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). Here, Reid failed to make his complaint to the trial court during J.M.'s, Michael's, and most of S.M.'s mother's testimony; therefore, Reid failed to preserve his complaint as to that testimony.

Reid was granted a running objection when the State questioned Swinnie about his prior conviction, but the running objection did not apply to the testimonies of J.M., Michael, and S.M.'s mother. *See Sattiewhite v. State*, 786 S.W.2d 271, 284 n.4 (Tex. Crim. App. 1989). Courts have allowed running objections to eliminate redundant and disruptive individual objections, promoting an orderly progression of the trial. *Id.* But

Reid v. State                                                                                                    Page 6

use of running objections is limited. *Id.*; *see, e.g., Goodman v. State*, 701 S.W.2d 850, 863 (Tex. Crim. App. 1985), *overruled in part on other grounds by Hernandez v. State*, 757 S.W.2d 744, 751-52 n.15 (Tex. Crim. App. 1988) (holding "running objection to all questions concerning the offense, the nature of the offense, and everything related to the offense" made during State's cross-examination of one witness was not sufficient to preserve complaint with respect to different witness who testified after intervening testimony of six other witnesses); *White v. State*, 784 S.W.2d 453, 461 (Tex. App.—Tyler 1989, pet. ref'd) (allowing running objection to cover testimony of one witness but not that of five subsequent witnesses); *cf. Ford v. State*, 919 S.W.2d 107, 112-14 (Tex. Crim. App. 1996) (holding running objection as "to any and all impact evidence" and "to all witnesses" testifying to such was sufficient to preserve claim). "[A]n advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter over too broad a time or over different witnesses." *Sattiewhite*, 786 S.W.2d at 284 n.4. Thus, Reid had the responsibility to preserve his complaint by making the proper objections at the time J.M., Michael, and S.M.'s mother took the stand or when they began to testify to the objectionable extraneous offenses. *See id.*; *see also Tunmire v. State*, Nos. 12-03-00231-CR, 12-03-00232-CR, 2004 WL 2008661, at *3 (Tex. App.—Tyler Sept. 8, 2004, pet. ref'd) (mem. op., not designated for publication). Reid failed to do so.

Likewise, Reid's motion for mistrial did not preserve his complaint as to any of the testimony about his prior conviction.[1] Under rule 33.1(a)(1), a motion for mistrial must

---

[1] Reid does not specifically complain that the trial court erred in denying his motion for mistrial.

be both timely and specific.  TEX. R. APP. P. 33.1(a)(1); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.  *Griggs*, 213 S.W.3d at 927.  Here, Reid did not move for a mistrial until after both J.M. and Michael had finished testifying about Reid's prior conviction without objection, and Reid re-urged his motion for mistrial only after both sides had rested and closed; therefore, it was untimely and failed to preserve Reid's complaint.

Second, because Reid forfeited his complaint as to J.M.'s, Michael's, and most of S.M.'s mother's testimony by failing to make a proper complaint to the trial court, error (if any) in allowing the State to question Swinnie about Reid's prior conviction was cured even though Reid objected when the State questioned Swinnie about his prior conviction. "An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

An exception to this general rule occurs when the accused offers evidence in an effort "to meet, destroy, or explain" the complained-of testimony. *Leday*, 983 S.W.2d at 719.  Reid argues that the exception applied here, excusing his responsibility to have made the proper objections at the time J.M., Michael, and S.M.'s mother took the stand or when they began to testify to the objectionable extraneous offenses.  We disagree.  The

testimony of J.M., Michael, and S.M.'s mother that Reid failed to complain about was not evidence that he offered in an effort "to meet, destroy, or explain" the testimony of Swinnie, which he did complain about. Rather, most of the testimony of J.M., Michael, and S.M.'s mother about Reid's prior conviction was brought out on cross-examination by the State and revealed Reid's prior conviction in even more damaging detail. Therefore, the exception does not apply in this case.

For the foregoing reasons, we overrule Reid's first issue.

### "Backdoor Hearsay"

In his second issue, Reid contends that the trial court abused its discretion by admitting "backdoor hearsay" regarding his alleged risk to re-offend. This issue concerns the following exchange:

> Q    [(By Prosecutor)]  And you were told at that point he was at a high risk to re-offend because he wouldn't take responsibility?
>
> [Defense Counsel]:  Your Honor, I'm going to object to the relevance and the materiality of this line of questioning and to this specific question.
>
> THE COURT:  Overruled.
>
> [Defense Counsel]:  We re-urge our 404(b) and 403 objection, Your Honor.
>
> THE COURT:  Overruled.
>
> Q    (BY [Prosecutor])  You're aware that he was determined to be a high risk to re-offend?
>
> [Defense Counsel]:  Your Honor, that's hearsay that she's incorporating into the questions.  Again, that's an improper question.
>
> THE COURT:  Overruled.

Q      (BY [Prosecutor])   Did your husband tell you that he was determined to be a high risk to re-offend?

A      [(By S.M.'s mother)]  Yes.

Even if the trial court should not have overruled Reid's objections, the admission of the alleged hearsay statement was harmless.  The admission of otherwise inadmissible hearsay is non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights.  TEX. R. APP. P. 44.2(b); *Moon v. State*, 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref'd).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial.  *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

As discussed above, the State questioned the defense witnesses extensively on cross-examination about Reid's prior conviction.  The State also drew comparisons between the prior conviction and the allegations in this case.  For instance, the State questioned Reid's son Michael as follows:

Q      Did he tell you there were three women?

A      Yes, ma'am.

Q      Did he tell you that he raped them when they were passed out?

A      No, ma'am.

Q      So he denied that?

A      No, ma'am.

Q      That's my question:  Did he deny raping women when they were passed out?

A      He - - he never opposed of saying he raped anyone.

Q      But he admitted to you?

A      No, ma'am.

Q      What did he say?

A      He explained the situation on the night that it occurred of what happened.  And what happened was there was jealousy from another woman because he didn't want an encounter with both of them.

Q      Okay.  So he takes no responsibility for that prior; is that right?

A      Obviously, he took some type of responsibility.

Q      Uh, he was found guilty by a jury.

A      Right.

Q      He took that responsibility.

A      Well, then, I guess he didn't, ma'am.

Q      He called them "sluts."  Are you aware of that?

A      No, ma'am.

Q      So he hasn't taken responsibility for that?  Is that right?

A      I'm pretty sure he did.  He did sentencing for it.

Q      Well, a jury made him take responsibility.  He never came into court like you did and pled guilty to anything; is that correct?

A        I don't know, ma'am.

Q        And he's telling you it was about jealous women making up stuff about him; is that right?

A        Right. Yes, ma'am.

Q        Three of them?

A        Yes, ma'am.

Q        You're aware there was no violence in those offenses?

A        Yes, ma'am.

Q        Uh, there was no threats?

A        Yes, ma'am.

Q        They're [*sic*] was no pain?

A        Yes, ma'am.

….

Q        Um, [S.M.] was not a prepubescent child. She was not a little girl that hadn't gone through puberty. She was a teenage girl?

A        Yes, ma'am.

Q        Her body would have been pretty similar to the bodies of the girls he raped when he was 28; is that right?

A        I don't know, ma'am.

Q        They were developed women. They were in their early twenties and [S.M.] was a developed, young teenager; is that right?

A        She was a teenager. Yes, ma'am.

In light of this similar evidence admitted without objection, we conclude that the admission of the alleged hearsay statement was harmless. We overrule Reid's second issue.

## Prior Convictions During Punishment Phase

In his third issue, Reid contends that the trial court abused its discretion in admitting evidence of prior convictions during the punishment phase. Specifically, Reid argues that the State failed to connect the convictions to him.

The indictment in this case contained the following enhancement allegation:

> And it is further presented in and to said Court that prior to the commission of the primary offense, on the 25th day of August A.D. 1990, in The Court of Onodago, County, New York, in Case Number 90-0974-1, the said **JAMES REID** was convicted of a felony, to-wit: Sexual Abuse and the said conviction became final prior to the commission of the primary offense[.]

During the punishment phase, the State read the enhancement allegation in open court before the jury. Reid pleaded "Not True" to the enhancement allegation. The State then offered into evidence State's Exhibit 1, described as the "Penitentiary Packet" for Indictment No.: 90-0974-1, The People of the State of New York v. James Reid. Reid objected: "We would object on lack of proper predicate, Your Honor, as to relevance." The State replied: "Your Honor, the State's Exhibit Number 1 is self-authenticating. It is relevant and it involves the same James Reid. Um, all of his family has already testified that he has this conviction. And we could tender to the Court if you would like to see it." The trial court admitted State's Exhibit 1. The State, however, abandoned the enhancement allegation.

Again, even if the trial court abused its discretion in admitting State's Exhibit 1, the error was harmless. Error in admitting evidence concerning extraneous offenses is reviewed under the standard for non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd).

In this case, as discussed above, the jury heard substantial testimony about Reid's prior conviction during the guilt/innocence phase. Furthermore, the following instruction was included in the punishment charge:

> You are instructed that the Defendant may be assessed punishment only for the offenses for which you have found him guilty.
>
> You are instructed that certain evidence has been admitted before you regarding the Defendant having been allegedly involved in other acts or act, if any, other than the ones for which he is now on trial. You cannot consider said evidence unless you find and believe beyond a reasonable doubt that the Defendant committed such other acts or act, if any were committed.
>
> In the event you have a reasonable doubt as to whether the Defendant committed the other acts or act, if any was committed, after considering all of the evidence before you and these instructions, you will not consider said acts or act for any purpose.
>
> Such evidence was admitted before you to assist you, if it does, in determining an appropriate punishment for the offenses for which you are assessing punishment.
>
> Therefore, if you believe such evidence, if any, beyond a reasonable doubt, you may not impose an additional punishment upon the Defendant for said acts or act, if any, but you may consider such evidence in determining an appropriate punishment for the offenses for which you are assessing punishment.

We generally presume that the jury follows the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). For these reasons,

we hold that any error in admitting State's Exhibit 1 was harmless, and we overrule Reid's third issue.

### Consecutive Sentences

In his fourth issue, Reid contends that the imposition of consecutive sentences without a statement of reasons constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Article 42.08 of the Code of Criminal Procedure vests the trial court with discretion to order concurrent or consecutive sentences. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2014). Reid acknowledges that the Court of Criminal Appeals in *Johnson v. State*, 492 S.W.2d 505 (Tex. Crim. App. 1973), rejected a contention that article 42.08 "could be constitutional only if certain standards are set forth to guide the court in the exercise of its discretion." *Id.* at 506. Reid argues, however, that *Johnson* must be reconsidered in view of subsequent U.S. Supreme Court holdings regarding death penalty jurisprudence. But the Court of Criminal Appeals has been given the opportunity to overrule *Johnson* and has declined to do so. *See Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006). In *Barrow*, the court stated, "The Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums." *Id.* at 382. Absent further guidance from the Court of Criminal Appeals, we thus hold that the imposition of consecutive sentences without a statement of reasons does not constitute cruel and unusual punishment in violation of the Eighth Amendment. We overrule Reid's fourth issue.

Having overruled all of Reid's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 29, 2015
Do not publish
[CR25]

